# Richmond

## L. Wilson York v. City of Danville.

January 16, 1967.

Record No. 6253.

Present, All the Justices.

S. W. Tucker and J. L. Williams (Jack Greenberg; James M. Nabrit, III; Melvyn Zarr; Ruth L. Harvey, on brief), for the plaintiff in error.

James A. H. Ferguson, City Attorney and John W. Carter, for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

On July 28, 1963, L. Wilson York and sixty-one others were arrested in the City of Danville on separate warrants charging each with parading without a permit in violation of a city ordinance. Convicted in the Municipal Court, they appealed to the Corporation Court where, by consent, the cases were consolidated, jury trials were waived, and the defendants were tried by the court. The court convicted each of the defendants for violation of the ordinance and meted out to them various sentences ranging from a $25 to a $50 fine and twenty days' imprisonment, with part of the imprisonment of each being suspended.

Each defendant has appealed and their cases are before us on a consolidated record. In their assignments of error they contend that (1) the evidence is insufficient to support a finding that they were guilty of parading without a permit in violation of the provisions of the ordinance, and (2) the ordinance is an unconstitutional prior restraint upon their rights of freedom of speech and assembly guaranteed to them under Section 12 of the Constitution of Virginia and the First and Fourteenth Amendments to the Constitution of the United States.

These cases arise out of racial disturbances in the City of Danville which commenced about May 31, 1963, and continued through the months of June, July and August of that year. During this period

the defendants and others sought by demonstrations and marches in public places and along the streets of the city to bring to the attention of the city officials and the public their grievances for the alleged discrimination against members of the Negro race in the conduct of the official and business affairs of the city.

On July 10, while these demonstrations were continuing, the city council adopted the ordinance which is the basis of these prosecutions. It "amended and reordained" Section 16-20 of the City Code of 1962 "regulating permits for parades and processions." The pertinent portions of the ordinance are printed in the margin.[1]

---

(1) "Section 16-20. *Regulations for Parades and Other Similar Uses of Public Places.*

\* \* \* \* \*

"B. *Definitions.*

\* \* \* \* \*

"(3) 'Parade' is any parade, march, ceremony, show, exhibition, pageant, or procession of any kind, or any similar display, in or upon any street, park or other public place in the City.
    "(4) 'Parade Permit' is a permit as required by this Ordinance.

\* \* \* \* \*

"C. *Permit Required.* No person shall engage in, participate in, aid, form or start any parade, unless a parade permit shall have been obtained from the Chief of Police (or other appropriate official or body).
    "(1) *Exceptions.* [Not here material]
"D. *Application.* A person seeking issuance of a parade permit shall file an application with the Chief of Police on forms provided by such officer.
    "(1) *Filing Period.* An application for a parade permit shall be filed with the Chief of Police not less than thirty days nor more than sixty days before the date on which it is proposed to conduct the parade.
    "(2) *Contents.* The application for a parade permit shall set forth the following information:

\* \* \* \* \*

    "(d) The date when the parade is to be conducted;
    "(e) The route to be traveled, \* \* \*;
    "(f) The approximate number of persons who \* \* \* will constitute such parade;
    "(g) The hours when such parade will start and terminate.
    "(3) *Late Applications.* The Chief of Police, where good cause is shown therefor shall have the authority to consider any application hereunder which is filed less than thirty days before the date such parade is proposed to be conducted.

\* \* \* \* \*

"E. *Standards for Issuance.* The Chief of Police shall issue a permit as provided for hereunder when, from a consideration of the application and from such other information as may otherwise be obtained, he finds that:
    "(1) The conduct of the parade will not substantially interrupt the safe and orderly movement of other traffic contiguous to its route;
    "(2) The conduct of the parade will not require the diversion of so great a

Prior to Sunday, July 28, 1963, the chief of police had received information through the press and over the radio that a "demonstration" would take place on that day. About 3:30 P. M. on July 28 he learned that a parade was being held on Main Street in the downtown business section of the city. He went there and found two groups of people, aggregating about 75 or 80, walking down the sidewalk on each side of the street. He said that they were "marching in two's and sometimes would be three abreast or four," and "singing and clapping their hands;" that they "did not seem to be acting as individuals, but acted in concert," and that their activity was "a demonstration or march rather than just a casual walk." Other officers identified York and the other defendants as taking part in the march or demonstration which continued for a distance of about five blocks. Since the required permit had not been obtained, the defendants were

---

number of police officers of the City to properly police the line of movement and the areas contiguous thereto as to prevent normal police protection to the City;

"(3) The conduct of such parade will not require the diversion of so great a number of ambulances as to prevent normal ambulance service to portions of the City * * *;

"(4) The concentration of persons, animals and vehicles at assembly points of the parade will not unduly interfere with proper fire and police protection of, or ambulance service to, areas contiguous to such assembly areas;

"(5) The conduct of such parade will not interfere with the movement of firefighting equipment enroute to a fire;

"(6) The conduct of the parade is not reasonably likely to cause injury to persons or property, to provoke disorderly conduct or create a disturbance;

"(7) The parade is scheduled to move from its point of origin to its point of termination expeditiously and without unreasonable delays enroute;

"(8) The parade is not to be held for the sole purpose of advertising any product, goods or event, and is not designed to be held purely for private profit.

"F. *Notice of Rejection.* The Chief of Police shall act upon the application for a parade permit within three days after the filing thereof. If the Chief of Police disapproves the application, he shall mail to the applicant within five days after the date upon which the application was field, a notice of his action, stating the reasons for his denial of the permit.

"G. *Appeal Procedure.* Any person aggrieved shall have the right to appeal the denial of a parade permit to the City Council. The appeal shall be taken within ten days after notice. The City Council shall act upon the appeal within ten days after its receipt.

\* \* \* \* \*

"J. *Contents of Permit.* [Not here material]

\* \* \* \* \*

"N. *Penalties.* Any person, firm or corporation violating any of the provisions of this Ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished as provided in Section 1-6 of the Danville City Code of 1962. Each day such violation is committed, or permitted to continue, shall constitute a separate offense and shall be punishable as such hereunder."

arrested and charged with the violation of the above-mentioned ordinance.

We have no difficulty in reaching the conclusion that the lower court correctly held that the activities of the defendants constituted a breach of the provisions of the ordinance. Section "C" of the ordinance provides that, "No person shall engage in, participate in, aid, form or start any parade, unless a parade permit shall have been obtained from the Chief of Police (or other appropriate official or body)." Section "B(3)" defines a "parade" as "any parade, march, ceremony, show, exhibition, pageant, or procession of any kind, or any similar display, in or upon any street, park or other public place in the City." Clearly the defendants were engaged or participating in a "parade, march," or "procession" "in or upon" the "street" or "other public place in the City" within the terms of the ordinance. Admittedly, the required permit had not been obtained.

Whether the ordinance is an unconstitutional prior restraint upon the defendants' rights of freedom of speech and assembly guaranteed to them under Section 12 of the Constitution of Virginia and the First and Fourteenth Amendments to the Constitution of the United States presents a more serious and difficult question. While the rights of freedom of speech and assembly are fundamental, they are not absolute and must be exercised in subordination to the general comfort and convenience and in consonance with peace, good order and the rights of others. *Hague* v. *Committee For Industrial Organization*, 307 U. S. 496, 515-516, 59 S. Ct. 954, 964, 83 L. ed. 1423; *Baines* v. *City of Danville*, 4 Cir., 337 F. 2d 579, 586; *McWhorter* v. *Commonwealth*, 191 Va. 857, 864-865, 63 S. E. 2d 20, 23; *City of Darlington* v. *Stanley*, 239 S. C. 139, 122 S. E. 2d 207, 209; 16 Am. Jur. 2d, Constitutional Law, § 345, p. 665 *ff.*; 16 C. J. S., Constitutional Law, § 213(5), p. 1102.

Consequently, the right to engage in a parade or demonstration as an exercise of the rights of freedom of speech and assembly is subject to reasonable and nondiscriminatory regulation. *Cox* v. *State of New Hampshire*, 312 U. S. 569, 61 S. Ct. 762, 85 L. ed. 1049, 133 A. L. R. 1396; *City of Darlington* v. *Stanley, supra;* 25 Am. Jur., Highways, § 190, pp. 489, 490; 64 C. J. S., Municipal Corporations, § 1769, p. 216.

The problem was thus analyzed by Chief Justice Hughes in *Cox* v. *State of New Hampshire, supra:*

"Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions. As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places." 312 U. S. at 574, 61 S. Ct. at 765.

It was further pointed out in the *Cox* case that the obvious advantage of requiring application for a permit is to afford opportunity for proper policing, to secure the convenient use of the streets by other travelers, and to minimize the risk of disorder. 312 U. S. at 576, 61 S. Ct. at 765, 766.

■ But it is well settled that to be valid such an ordinance must be reasonable in its requirements and not oppressive in its operation. 25 Am. Jur., Highways, § 190, p. 490. Stated conversely, an ordinance which imposes arbitrary, oppressive and unwarranted requirements cannot be sustained. We think that the provision in the ordinance here under consideration, requiring the application for a permit to be filed with the chief of police "not less than thirty days nor more than sixty days before the date on which it is proposed to conduct the parade," is of the latter character.

There is nothing in the wording of the ordinance or in the record

of the trial below to explain or justify why so protracted a "Filing Period" is required. There is no evidence that such a period will be necessary in order to prepare for the proper policing of the city streets or the regulation of traffic in anticipation of such a parade or demonstration. We have been cited to no case, nor have we been able to find any, which sustains such a limitation on an application for a like permit. The ordinances sustained in *Cox* v. *State of New Hampshire, supra,* and *City of Darlington* v. *Stanley, supra,* merely required permits without limitation on the time within which application must be made therefor.

Ordinances of this character sometimes require twenty-four hours' notice of an application for a permit to hold a parade. This is illustrated in *Commonwealth* v. *Hessler,* 141 Pa. Super. 421, 15 A. 2d 486, relied on by the city. Such a period may be required in order that the police may prepare for the regulation of traffic and the preservation of good order along the proposed route of the parade. But it is a matter of common knowledge that no such protracted period as thirty days will be required for that purpose.

The practical effect, if not the purpose, of the thirty-day requirement in the Danville ordinance was to prevent the defendants from publicly proclaiming their grievances during this period. It inhibited demonstrations which might be peaceful and orderly as well as those which might be riotous and disorderly.

We conclude that the provision in the ordinance requiring that application for a parade permit be filed with the chief of police "not less than thirty days nor more than sixty days before the date on which it is proposed to conduct the parade" is an arbitrary and unreasonable prior restraint upon the rights of freedom of speech and assembly guaranteed to the defendants under the provisions of the Constitution of Virginia and the Constitution of the United States.

We agree with the position of the defendants that the provision in paragraph "D(3)" of the ordinance for the consideration of "Late Applications" does not insure or preserve the constitutionality of the ordinance. Under the terms of this paragraph, the chief of police "where good cause is shown" shall have the authority to consider any application which is filed less than thirty days before the date such parade is proposed to be conducted. Here the determination by the chief of police that "good cause is shown" is unlimited and undefined. While paragraph "E" provides the "Standards for Issuance" of a permit by the chief of police, before applying such

standards he must first determine that good cause has been shown for considering a late application. Vesting such unlimited discretion in an administrative official has been universally condemned. *Kunz* v. *People of State of New York*, 340 U. S. 290, 294, 295, 71 S. Ct. 312, 315, 95 L. ed. 280; *Cox* v. *State of Louisiana*, 379 U. S. 536, 557, 85 S. Ct. 453, 465, 466, 13 L. ed. 2d 471; *Thompson* v. *Smith*, 155 Va. 367, 378, 379, 154 S. E. 579, 71 A. L. R. 604; *City of Florence* v. *George*, 241 S. C. 77, 127 S. E. 2d 210, 211.

It is argued that since the defendants did not apply for a permit under the ordinance they are not in a position to challenge its constitutionality. A like contention has been firmly rejected in the decisions of the Supreme Court of the United States. In *Staub* v. *City of Baxley*, 355 U. S. 313, 319, 78 S. Ct. 277, 281, 2 L. ed. 2d 302, it is said: "The decisions of this Court have uniformly held that the failure to apply for a license under an ordinance which on its face violates the Constitution does not preclude review in this Court of a judgment of conviction under such an ordinance." See also, *Smith* v. *Cahoon*, 283 U. S. 553, 562, 51 S. Ct. 582, 585, 75 L. ed. 1264; *Lovell* v. *City of Griffin*, 303 U. S. 444, 452, 58 S. Ct. 666, 669, 82 L. ed. 949; *City of Florence* v. *George, supra*, 127 S. E. 2d at 213.

For these reasons we hold that the provision in the ordinance requiring that application for a parade permit be filed with the chief of police "not less than thirty days nor more than sixty days before the date on which it is proposed to conduct the parade," is unconstitutional and void. Consequently, the judgment in each case is reversed and the prosecution dismissed.

*Reversed and dismissed.*