# Richmond

DOYLE J. THOMAS, L. W. CHASE, BERTHA BRUCE, LAWRENCE GEORGE CAMPBELL, ALEXANDER ISIAH DUNLAP, JULIOUS EMANUEL ADAMS AND ARTHUR PINCHBACK, JR. v. CITY OF DANVILLE.

January 16, 1967.

Record No. 6258.

Present, All the Justices.

*S. W. Tucker* (*Ruth L. Harvey; J. L. Williams, Henry L. Marsh, III*, on brief), for the plaintiffs in error.

*James A. H. Ferguson, City Attorney* and *John W. Carter*, for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

This case arises out of racial demonstrations which occurred in the City of Danville in the early summer of 1963. On July 6 the judge of the Corporation Court of that city, in an ex parte proceeding on a motion by the City Manager, entered an order restraining Lawrence George Campbell, Alexander Isiah Dunlap, Julious Emanuel Adams and Arthur Pinchback, Jr., and their servants, agents, employees, attorneys, "and all other persons acting in concert" with them, from participating in certain actions and conduct. The restraining order was continued from time to time, and at a hearing which commenced

on July 29 and continued through August 2, the court heard evidence on whether to make the temporary order permanent or to dismiss it. At the conclusion of the hearing the court made perpetual its injunctive order previously entered and perpetually enjoined the named defendants "and all persons similarly situated," their agents, servants, employees and attorneys, "and all persons in active concert and participation with them," from engaging and participating in the following actions and conduct:

"1. Obstructing vehicular and pedestrian traffic by marching and congregating in such manner as to impede the normal flow of either vehicular or pedestrian traffic; and

"2. Obstructing the use, enjoyment, ingress or egress of public facilities and public buildings of the City of Danville, or obstructing the use, enjoyment or ingress or egress of private property; and

"3. From committing assaults or injuries upon any persons, and from damaging or injuring any property whatsoever, private or public; and

"4. From creating unnecessarily loud, objectionable, offensive and insulting noises, which are designed to upset the peace and tranquility of the community; and

"5. From inciting any persons to, or participating in, any riot or violation of the laws of the Commonwealth of Virginia or the City of Danville designed to maintain the public peace within the City of Danville; and

"6. From engaging in any act in a violent and tumultuous manner or holding unlawful assemblies such as to unreasonably disturb or alarm the public within the City of Danville; and

"7. From participating in, financing, sponsoring, encouraging or engaging in meetings or other activities whereby the violation of the laws of the Commonwealth of Virginia, City of Danville or the terms of this injunction order are suggested, advocated or encouraged; and

"8. From participating in and inciting mob violence, rioting and inciting persons to riot."

From this order Doyle J. Thomas and the named defendants have appealed.

In their assignments of error the defendants attacked the restraints imposed by the temporary and permanent injunctions, on the grounds

that (1) they are "unsupported by the law and facts;" (2) the lower court erred in its rulings on admission of certain evidence; and (3) they violate "the rights of the defendants named and all other Negroes of Danville and are contrary to the First and Fourteenth Amendments to the United States Constitution." However, in their brief the first two assignments of error are abandoned and only the third is pressed on this appeal.

The underlying facts, stated in the light of the lower court's order, may be summarized thus:

A series of protest demonstrations by Negroes against alleged racial discrimination began in the City of Danville on May 31, 1963. These demonstrations consisted of marches or parades along the streets and in public places, in which those participating undertook publicly to protest the alleged discrimination. At first the marches and demonstrations were orderly, but later they became riotous and disorderly. On June 4, at approximately 5:00 P. M., just as business was beginning to close in the downtown area and traffic was quite heavy, a group of demonstrators, led by two of the defendants, Campbell and Dunlap, left the sidewalks, completely blocked the street, and marched for several blocks. Campbell dared the Chief of Police to arrest them for blocking traffic. It was necessary to have two shifts of police officers on duty to maintain order there.

On June 5 a group, estimated at about 100, marched downtown to the Municipal Building, singing, shouting, yelling and chanting. The shouting and screaming were very loud on this occasion and disturbed not only the employees in the Municipal Building, but also other workers in the same area. At approximately 4:15 P. M., on a signal from the defendant Campbell, the group invaded the building and occupied the City Manager's office, although he was not present. The Chief of Police promptly ordered them to leave and was told by Campbell that they were going to stay there all night. Campbell was arrested and taken away. The other demonstrators then left the building and as they did so one young girl struck the Chief of Police in the face with her pocketbook. She, too, was placed under arrest.

After the demonstrators had left the building, they gathered on the street and continued to be unruly. They cursed and spat at the police officers. A group marched down the middle of Patton Street and all efforts to remove them were of no avail. As the group neared the Capitol Theater on Main Street they began throwing bricks and bottles. Several police officers were struck by the missiles and one

broke a window in a hotel. Traffic was completely blocked. When police officers undertook to take into custody one member of the group, then numbering some 200 to 250 persons, they were threatened and rocks and bottles were hurled at them. After the officers had succeeded in entering a police car the vehicle was hit.

Sometime after 8:00 o'clock that night, after the demonstrations had been going on for more than four hours, the group sat down on a main business street, blocking all traffic. At about this time the police summoned Honorable Archibald M. Aiken, Judge of the Corporation Court of Danville. This was done pursuant to Code, § 18.1-247 [Repl. Vol. 1960], which authorizes judges and justices of the peace to suppress riots and unlawful assemblies and requires them to go among, or as near as may be with safety to, persons riotously or unlawfully assembled and command that they disperse. Judge Aiken spoke to the group and asked them to disperse. They refused to do so. Later the group disbanded when the use of fire hoses against it was threatened.

On the next day, June 6, upon application of the city, the judge of the lower court issued the temporary injunction and restraining order which was later made permanent. However, the demonstrations did not cease. On June 10 there was another mass demonstration which began in the morning and continued until night. During the morning hours the group marched in the middle of the street, completely blocking traffic, and came to the Municipal Building. When the Chief of Police ordered the arrest of the leaders the group attacked the police officers and followed them to the jail door. To prevent the demonstrators from taking over the jail it was necessary that fire hoses be connected and water thrown on the group.

After the mob at the jail was dispersed, another formed in a nearby street. Several white men who were not involved in the demonstrations got into an automobile and tried to drive away. When the engine choked the demonstrators swarmed over the car, beating on it with socks filled with rocks and sand, tore one door completely off, and damaged the vehicle to the extent of more than $300. The owner and occupants of the car were assaulted and struck.

There were other demonstrations of the same character on June 13 and 19 and on July 10, 11, 12 and 28. Indeed, some of the demonstrations were in progress during the hearings of the evidence on the application for this injunction. On July 28, a number of demonstrators were arrested for parading without a permit in violation of

an ordinance of the city. See *York* v. *City of Danville*, 207 Va. 665, 152 S. E. 2d 259, this day decided.

The defendant Doyle J. Thomas, who is a minister and the pastor of a local church, testified that he was in sympathy with the objectives of the demonstrations, which he said were to present "in a peaceful and law-abiding fashion, if possible," to the people of Danville the grievances of the members of his race. The defendant L. W. Chase, who is likewise a minister, testified to the same effect.

It is well settled that a court of equity has jurisdiction upon the application of the State or a governmental subdivision to restrain by injunction acts which are a menace to the public rights or welfare. 28 Am. Jur., Injunctions, § 160, p. 659; 43 C. J. S., Injunctions, § 123, p. 662; *Ritholz* v. *Commonwealth*, 184 Va. 339, 349, 35 S. E. 2d 210, 214. Indeed, in their brief the defendants admit that the exercise of this jurisdiction in the present case was proper. They concede "that the Chancellor properly exercised his discretion when by items 1 and 2 of the permanent injunction he enjoined the obstruction of traffic and the obstruction of the use of public and private facilities in the City of Danville." However, the defendants contend that the remaining provisions of the injunctive order violate the fundamental liberties of freedom of speech and assembly guaranteed to them under the Federal Constitution.

In considering this contention we should remember that "[w]hile the rights of freedom of speech and assembly are fundamental, they are not absolute and must be exercised in subordination to the general comfort and convenience and in consonance with peace, good order and the rights of others." *York* v. *City of Danville, supra*, 207 Va. at 669, 152 S. E. 2d at 263, and authorities there cited.

"It does not follow that rights granted by the First Amendment may not be regulated because they hold a preferred position in the hierarchy of the constitutional guarantees of the incident of freedom, but they are subordinate to the greater rights of general public interest and to the right of government to maintain and protect itself. Such rights are subject to reasonable restrictions when necessary to safeguard the public interest, * * *." 16 C. J. S., Constitutional Law, § 213(5), p. 1106.

The rights guaranteed to the defendants under the Federal Constitution were not a license for them to trample upon the rights of the public, as was done in some of the incidents in the present case.

As was said in *Adderley* v. *State of Florida,* 385 U.S. 39, 48, 87 S. Ct. 242, 247, 17 L. ed. 2d 149, 156 (decided November 14, 1966), the Federal Constitution does not guarantee that "people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please."

■ Clearly the lower court had the right in the present case, in the protection of public interest, to enjoin the defendants and their associates from obstructing or attempting to obstruct the free use of the streets and the free ingress and egress to the public buildings and other acts which were patently disorderly and riotous. *Youngdahl* v. *Rainfair, Inc.,* 355 U. S. 131, 139, 78 S. Ct. 206, 212, 2 L. ed. 2d 151.

What Chief Justice Hughes said in *Cox* v. *State of New Hampshire,* 312 U. S. 569, 574, 61 S. Ct. 762, 765, 85 L. ed. 1049, 133 A. L. R. 1396, is quite pertinent here: "The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need." See also, *Cox* v. *State of Louisiana,* 379 U. S. 536, 554, 555, 85 S. Ct. 453, 464, 13 L. ed. 2d 471.

This brings us to the consideration of the validity of the several provisions of the injunctive order which the defendants say violate their constitutional rights. Item 3 enjoins "committing assaults or injuries upon any persons, and from damaging or injuring any property whatsoever, private or public." We see nothing here in conflict with the constitutional rights of the defendants.

■ Items 4 and 6 read thus:

"4. From creating unnecessarily loud, objectionable, offensive and insulting noises, which are designed to upset the peace and tranquility of the community.

"6. From engaging in any act in a violent and tumultuous manner or holding unlawful assemblies such as to unreasonably disturb or alarm the public within the City of Danville."

These items are attacked on the ground that they are in conflict with the holding in *Terminiello* v. *City of Chicago,* 337 U. S. 1, 69

S. Ct. 894, 93 L. ed. 1131. In that case, Terminiello was convicted of disorderly conduct in violation of a city ordinance of Chicago which made it a crime to "make, aid, countenance, or assist in making any improper noise, riot, disturbance, breach of the peace, or diversion tending to a breach of the peace, within the limits of the city." Construing the ordinance, the trial court held that misbehavior was condemned by the ordinance "if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm." In reversing the conviction the Supreme Court held that "freedom of speech, though not absolute, * * * is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that *rises far above public inconvenience, annoyance, or unrest*." (Emphasis added.) 337 U. S. at 4, 69 S. Ct. at 896.

We find that restraint of noises which are "designed to upset the peace and tranquility of the community" in Item 4 is within the condemnation of this holding. For the same reason, the restraint in Item 6 on the described acts, "such as to unreasonably disturb or alarm the public within the City of Danville," cannot stand.

The restraints in Items 5 and 8, respectively, read thus:

> "5. From inciting any persons to, or participating in, any riot or violation of the laws of the Commonwealth of Virginia or the City of Danville designed to maintain the public peace within the City of Danville.
> "8. From participating in and inciting mob violence, rioting and inciting persons to riot."

The defendants argue that these items are in conflict with the holding in *Terminiello, supra*. We find nothing in the opinion in that case to support that contention. We think it is quite proper that persons be restrained from inciting others to mob violence or rioting, or violation of the law, and from participating in such conduct. The constitutional right of freedom of speech does not confer the right to persuade others to violate the law. *Kasper* v. *Brittain*, 6 Cir., 245 F. 2d 92, 95, cert. den. 355 U. S. 834, 78 S. Ct. 54, 2 L. ed 2d 46; *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490, 502, 69 S. Ct. 684, 690, 93 L. ed. 834; *Cantwell* v. *State of Connecticut*, 310 U. S. 296, 308, 60 S. Ct. 900, 905, 84 L. ed. 1213; 16 C. J. S., Constitutional

Law, § 213(5), pp. 1105, 1106; 16 Am. Jur. 2d, Constitutional Law, § 349, p. 674.

Item 7 restrains the defendants "[f]rom participating in, financing, sponsoring, encouraging or engaging in meetings or other activities whereby the violation of the laws of the Commonwealth of Virginia, City of Danville or the terms of this injunction order are *suggested*, advocated or encouraged." (Emphasis added.) We think this restraint upon encouraging or participating in meetings whereby the violation of the laws or the terms of this injunction are "suggested" is too broad. It would inhibit the mere suggestion or discussion of the validity of such laws or the terms of the injunction and the advisability of attacking them. We hold that with the elimination of this word, the restraints imposed by this item are free of constitutional defect.

The final contention of the defendants is that the restrictions in Items 3, 5 and 8, which they say "enjoin violations of the criminal laws," unlawfully deprive them of the right to a trial by jury with respect to such violations.

Like contentions have been frequently and uniformly rejected by the courts. This is upon the principle that such injunctive restraints are not criminal in character but are civil; that their purpose is not to convict and punish for violation of the law, but to prevent such violation. Consequently, they do not impinge upon the constitutional right to trial by jury. 28 Am. Jur., Injunctions, § 158, p. 657; 39 Am. Jur., Nuisances, § 149, pp. 414, 415.

The injunctive order appealed from will be modified to eliminate Items 4 and 6 and the word "suggested" in Item 7. As modified, it is affirmed.

The City of Danville having substantially prevailed on this appeal will recover its costs. Code, § 14.1-181 [Repl. Vol. 1964].

*Modified and affirmed.*