**Joseph HAMMOND, John W. Stroman and Benjamin F. Bryant, Jr., a minor, by Benjamin F. Bryant, Sr., his Father and Next Friend, Plaintiffs,**

v.

**SOUTH CAROLINA STATE COLLEGE, a public body corporate, Defendant.**

**Civ. A. No. 67–165.**

United States District Court
D. South Carolina,
Orangeburg Division.

Heard June 22, 1967.

Decided Aug. 31, 1967.

Matthew J. Perry, Lincoln C. Jenkins, Jr., and Hemphill P. Pride, II, Columbia, S. C.; Ernest A. Finney, Jr., Sumter, S. C. and Robert L. Carter, Maria L. Marcus, and Lewis M. Steel, New York City, for plaintiffs.

Daniel R. McLeod, Atty. Gen., South Carolina, and Ben T. DeBerry, Asst. Atty. Gen., South Carolina, for defendant.

HEMPHILL, District Judge.

Plaintiffs Hammond, Stroman and Bryant, Jr., seek protection of their individual and collective constitutional rights. On February 23, 1967, while enrolled as students in South Carolina State College in Orangeburg they "assembled [1] themselves with numerous other students * * * upon the campus of said college * * * and expressed themselves * * concerning certain practices then in existence at said college." On February 24, 1967 each received a communication from the Dean of Students which read:

You are directed to meet the Faculty Discipline Committee in my office, Room 207, Mechanical Building, at 2:15 p. m. today, February 24, 1967, to answer charges that you were in violation of College regulations, specifically #1, under 4, page 49 of the Student Handbook which reads * * * The student body or any part of the student body is not to celebrate, parade, or demonstrate on the campus at any time without the approval of the Office of the President. The Board of Trustees meeting in March of 1960 went on record as disapproving of demonstrations which involve violation of laws or of College regulations, or which disrupt the normal College routine.

Thereafter, as directed, they severally met with the Faculty Discipline Committee. After the meetings each plaintiff was advised:

Reference is made to the Discipline Committee hearing held in my office this afternoon on a report brought through the Office of the Dean of Students that you violated Rule 1, under 4, page 49 of the College Handbook by participating in a demonstration on campus without approval.

The Committee feels that it gave you ample opportunity to refute the charge, but your refusal to do so left it no alternative but to take action.

The Committee has instructed me to inform you that its decision is that you be indefinitely suspended from the College effective February 24, 1967 until Augest 1, 1970. On or after that date (August 1, 1970) you may reapply for admission, but readmission shall depend upon unanimous approval of the Discipline Committee in full session assembled.

In accordance with the suspension you are to remain away from the campus until the end of the suspension period.

A requested rehearing with the Faculty Discipline Committee was had on March 2, 1967 and they were advised that the suspension was to remain in effect but that each could apply for readmittance in August, 1967. Suit was commenced March 10, 1967. On March 15, 1967, plaintiffs filed Petition for a Temporary Restraining Order, and the same day this court ordered their readmittance pendente lite and ruled defendant to show cause why the suspensions should not be enjoined. Counsel requested various postponements and the matter was heard June 22, 1967 and leave was given for the filing of supporting briefs and memoranda.

■ Defendant initially challenges the jurisdiction of this court. The issue is not seriously pressed. Plaintiffs complain that defendant has deprived them of their rights under the First Amendment [2] to the Constitution of the United States, and have done so by virtue of the authority or color of office enjoyed by the administrators and faculty of defendant. Defendant is a state institution and its administrative personnel are vested

1. Alleged in paragraph 5 of the complaint as orderly and peaceful; characterized in paragraph 6 of the Answer as "unauthorized, noisy and disorderly demonstrations."

2. Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

with state authority. Procedure under 28 U.S.C. section 1343(3) and pursuit of rights under 42 U.S.C. section 1983 are proper here. This forum is proper; this court has jurisdiction. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed 2d 492; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622.

The facts which are not in dispute are essentially as follows.

On February 23, 1967 these three plaintiffs in the company of approximately three hundred others gathered together on the campus of the school to express their feelings regarding some of the school's practices.

This, they claim, they did in an orderly and peaceful fashion. The school, however, maintains that the plaintiffs were leaders of the demonstration and that it was noisy and disorderly.

The plaintiffs were unquestionably aware of the rule against unauthorized demonstrations. However, on February 21, 1967 the President of the institution had delivered a written report publicly assuring the students that no rule deprived them of the constitutional rights of free speech and of peaceable assembly.

According to their testimony to the Faculty Discipline Committee on that day, they received the notice only a matter of several hours prior to the meeting.

At the Discipline Committee hearing each of them objected to the notice given and refused to answer questions on the grounds that they desired the assistance of counsel. One felt that he might incriminate himself. They demanded to be confronted with their accusers and to be allowed to cross examine them.

The Faculty Discipline Committee was not disposed to postpone the hearing to allow time for counsel nor was it disposed to allow confrontation and cross examination of the witnesses. The plaintiffs however did establish that they were participants in an assembly and that in exercising the right to do so they would deny having violated Rule 1.

The same date each of the plaintiffs were notified as to their suspension as set forth above.

The school's Board of Trustees had in March of 1960 passed the following resolution in the avowed interest of protecting the "students of this institution from violence and to preserve public peace and order."

Be It Resolved that hereafter any student at South Carolina State College who shall engage in any public demonstrations without prior approval of the College administration shall be summarily expelled.

The controversy here revolves around the school rules of deportment and discipline. Their obvious purpose is to protect the authority and administrative responsibility which is imposed on the officers of the institution. Unless the officials have authority to keep order, they have no power to guarantee education. If they cannot preserve order by rule and regulation, and insist on obedience to those rules, they will be helpless in the face of the mob, powerless to command or rebuke the fanatic, the irritant, the malingerer, the rabble rouser. To be sure, this is a tax supported institution, but this does not give license to chaos, or the hope to create chaos. The majority of the taxpayers who established, through representative government, the institution, and all the taxpayers who support this institution, have a vested interest in a peaceful campus, an academic climate of order and culture. The power of the president to oversee, to rule, is an integral part of the mechanism for providing and promoting education at State College. Be that as it may, colleges, like all other institutions, are subject to the Constitution. Academic progress and academic freedom demand their share of Constitutional protection. Here we find a clash between the Rules of the school and the First Amendment to the Constitution of the United States.

The First Amendment does not speak equivocally. It prohibits any law "abridging the freedom of speech, or of

the press. It must be taken as a command of the broadest scope that explicit language, read in the context of a liberty-loving society, will allow." Bridges v. State of California, 314 U.S. 252, 263, 62 S.Ct. 190, 194, 86 L.Ed. 192, Schneider v. State, 308 U.S. 147. These rights of the First Amendment, including the right to peaceably assemble, are not to be restricted except upon the showing of a clear and present danger, of riot, disorder, or immediate threat to public safety, peace, or order. Dennis v. United States, 341 U.S. 494, 71 S. Ct. 857, 95 L.Ed. 1137, Cantwell v. State of Connecticut, 310 U.S. 296. "Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation." Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct 315, 323, 89 L.Ed. 430. Conduct which involves activities such as picketing and marching, however, are a departure from the exercise of the rights in pristine form and they do not receive the same degree of freedom. Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471. It has been argued to me that Rule 1 of the Student Handbook as it is written is a previous restraint upon these rights and as such it is unlawful and must be struck down as being "incompatible with the guaranties of the first amendment." Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430. See also Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460; First Unitarian Church of Los Angeles v. Los Angeles County, 357 U.S. 545, 78 S.Ct. 1350, 2 L.Ed.2d 1484. I am persuaded that Rule 1 is on its face a prior restraint on the right to freedom of speech and the right to assemble. The rule does not purport to prohibit assemblies which have qualities that are unacceptable to responsible standards of conduct: it prohibits "parades, celebrations, and demonstrations" without prior approval without any regard to limiting its

proscription to assemblies involving misconduct or disruption of government activities or non-peaceable gatherings. On this ground I do not feel that it is necessary to make a finding as to the nature of the demonstration. It was alleged by the defendant that the students were suspended not under Rule 1 but under Rule 4, presumably a rule covering misconduct. It may well be that the conduct of these students would have warranted disciplinary action under some disciplinary rule such as Rule 4[3] but in point of fact they were not suspended under Rule 4. They were charged under Rule 1, they were given hearings under Rule 1, and they were suspended under Rule 1.

In no way is it my intention to rule that school officials may not make disciplinary rules and enforce them. Most certainly they may. I am constrained to rule, however, that the rule under which these students were suspended was incompatible with the constitutional guaranties and is invalid.

The defendant has argued that it, no less than a private citizen, has the right to control the use of its property, and that under the authority of Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471, no one has the right to demonstrate at any time at any place they they may choose. The campus, under this argument, being dedicated to scholarship and learning would be likened to a hospital or the jail entrance in Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), and prohibiting demonstrations would, similarly, not infringe any constitutional rights. In principle the argument is unassailable, however it does not apply to this case. The rule broadly brings the entire campus of a state college within its ambit. The considerations which existed in *Adderley* are not present here. In Edwards v. State of South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697,

---

3. For instance, rule 13 provides: Students are expected to conduct themselves as ladies and gentlemen at all times. Boisterousness, profanity, insubordination, unkempt appearances, and any other undesirable quality will not be tolerated and is not expected of students at the College.

the Court recognized that assembling at the site of government for peaceful expression of grievances constituted exercise of First Amendment rights in their pristine form. I am not persuaded that the campus of a state college is not similarly available for the same purposes for its students.

Therefore, under the authority of Thomas v. Collins, I find that the suspension of the students was unlawful and cannot be given effect. This, of course, does not mean that the school may not institute proper disciplinary proceedings against the students for lack of deportment and violations of other appropriate disciplinary regulations.

I therefore order that the defendants be permanently enjoined from enforcing the decisions of the Faculty Discipline Committee which dismissed these plaintiffs for breach of Rule 1 of Part 4 of the Student Handbook.

And it is so ordered.