## Richmond

WILLIAM SYLVESTER OWENS v. COMMONWEALTH OF VIRGINIA.

ROY LEE FERGUSON, JR. v. COMMONWEALTH OF VIRGINIA.

March 8, 1971.

Record Nos. 7400 and 7401.

Present, All the Justices.

*John C. Lowe* (*Philip J. Hirschkop*, on brief), for plaintiff in error in Record Nos. 7400 and 7401.

A. R. *Woodroof, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error in Record Nos. 7400 and 7401.

GORDON, J., delivered the opinion of the court.

Defendants William Sylvester Owens and Roy Lee Ferguson, Jr. were members of an unruly crowd in Charlottesville on the night of September 8, 1968 when the police ordered the crowd to disperse. Property had been damaged, apparently by members of the crowd, and the police feared further physical violence. Owens and Ferguson were arrested, tried for the misdemeanor of remaining at the place of an unlawful assembly[1] after having been lawfully warned to disperse, and convicted and sentenced to six months imprisonment. Va. Code Ann. §§ 18.1-254.1(c),-254.4 (Supp. 1970).[2]

---

[1] Warrants charged Owens and Ferguson with the offense of remaining at the place of a riot *or* unlawful assembly after having been lawfully warned to disperse. See Code §§ 18.1-254.1(a) and (c) and -254.4, n. 2 *infra.* The trial court found them guilty as charged without indicating whether it found that they remained at the place of a riot or of an unlawful assembly. For reasons set forth in n. 7 *infra,* we assume the court found that they remained at the place of an unlawful assembly, not a riot.

[2] Chapter 5, article 1.1, Va. Code Ann. (Supp. 1970) (which we will call the "Virginia anti-riot statute") provides:

"§ 18.1-254.01. *Obstructing free passage of others.*—Any person or persons who in any public place or on any private property open to the public unreasonably or unnecessarily obstructs the free passage of other persons to and from or within such public place or private property and who shall fail or refuse to cease such obstruction or move on when requested to do so by the owner or lessee or by a duly authorized law-enforcement officer shall be guilty of a misdemeanor and punished as provided in § 18.1-9. Nothing in this section shall be construed to prohibit lawful picketing."

"§ 18.1-254.1. *What constitutes riot, rout or unlawful assembly.*—As used in this article:

(a) Any unlawful use of force or violence, by six or more persons acting together, is riot. Any threat to use unlawful force or violence, if accompanied by immediate power of execution, by six or more persons acting together to cause, produce, or promote unlawful use of force or violence, is riot.

(b) Whenever three or more persons acting together make any attempt to do any act which would be riot if actually committed, such acts shall be a rout.

(c) Whenever three or more persons assemble with the common intent or with means and preparations to do an unlawful act which would be riot if actually committed, but do not act toward the commission thereof, or whenever three or more persons assemble without authority of law and for the purpose of disturbing the peace or exciting public alarm or disorder, such assembly is an unlawful assembly."
"* * *

"§ 18.1-254.3. *Participating in rout or unlawful assembly.*—Every person who participates in any rout or unlawful assembly shall be guilty of a misdemeanor."
"§ 18.1-254.4. *Remaining at place of riot, rout or unlawful assembly after warning*

Owens and Ferguson appeal, contending that the First Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, protects their rights to assemble in a manner declared unlawful by statute, clause (c) of Code § 18.1-254.1, n. 2 *supra*. Consequently, they contend that their convictions under Code § 18.1-254.4 for failure to disperse from an unlawful assembly, as defined in that statute, are constitutionally impermissible and must be reversed.

■ "[A]ny attempt to restrict liberties [secured by the First Amendment] must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger. The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. * * *" *Thomas* v. *Collins*, 323 U.S. 516, 530, 65 S.Ct. 315, 322-23, 89 L.Ed. 430, 440 (1945).

"When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious." *Cantwell* v. *Connecticut*, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213, 1220 (1940). But absent such clear and present dangers, First Amendment rights of assembly cannot be restricted. *Hammond* v. *South Carolina State College*, 272 F. Supp. 947, 950 (D. S.C. 1967); *see Cox* v. *Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Terminiello* v. *Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Abernathy* v. *Conroy*, 429 F.2d 1170 (4th Cir. 1970).

■ On its face and in the context of the Virginia anti-riot statute as a whole, see n. 2 *supra*, the statutory definition of an unlawful assembly, contained in clause (c) of Code § 18.1-254.1, makes unlawful a peaceable assembly that poses no clear and present danger. An assembly is made unlawful by the mere intent or purpose of the persons who gather together, even though the assembly is peaceable

*to disperse.—*Every person, except public officers and persons assisting them, remaining present at the place of any riot, rout, or unlawful assembly after having been lawfully warned to disperse, shall be guilty of a misdemeanor."
"* * *"

and the persons gathered together have done nothing and said nothing.

First, clause (c) of Code § 18.1-254.1 makes unlawful an assembly of persons "with the common intent or with means and preparations to do an unlawful act which would be riot if actually committed, but [who] do not act toward the commission thereof". N. 2 *supra*. So an assembly of persons who intend force and violence is declared unlawful, even though they do not have the means of effecting force and violence and they do not pose a threat of force and violence.[3]

Secondly, clause (c) makes unlawful an assembly of persons "without authority of law[4] and for the purpose of disturbing the peace or exciting public alarm or disorder". *Id.* Again, a mere gathering of inactive, silent and unobstructive persons is declared unlawful if they have the described subjective intent or purpose.[5]

The statutory definition of unlawful assembly may be contrasted with the following common law definition, taken from *Black's Law Dictionary* at 1705 (4th ed. 1951) and considered in *Heard* v. *Rizzo*, 281 F. Supp. 720 (E.D. Pa. 1968), *aff'd per curiam*, 392 U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968):

> "*Unlawful Assembly*. At common law. The meeting together of three or more persons, to the *disturbance* of the public peace, and *with the intention of co-operating in the forcible and violent execution of some unlawful private enterprise*. If they take steps towards the performance of their purpose, it becomes a *rout;* and, if they put their design into actual execution, it is a *riot*. To constitute offense it must appear that there was *common intent* of persons assembled to attain purpose, whether lawful or unlawful, *by commission of acts of intimidation and disorder likely to produce danger* to peace of neighborhood, *and actually tending to inspire courageous persons with well-grounded fear of serious*

---

[3] Compare clause (a) of Code § 18.1-254.1, defining riot as action either involving force and violence or threatening force and violence.

[4] Respecting the phrase "without authority of law", counsel could only suggest that it means "without a permit". If so, those words are irrelevant to our consideration. If an assembly is constitutionally protected, the state cannot forbid the assembly by denying a permit.

The phrase cannot be reasonably interpreted as excluding assemblies protected by the First Amendment to the Constitution of the United States because they need no "authority of law".

[5] Compare Code § 18.1-254.01, forbidding obstruction of free passage, and clause (b) of § 18.1-254.1, defining rout as an attempt to commit riot.

*breaches of public peace.*" (Emphasis in first and third sentences supplied.)

As indicated by the emphasized words, the common law definition expressly requires clear and present danger of violent conduct.

Not only is the statutory definition of unlawful assembly overbroad[6] in including assemblies that pose no clear and present danger, but it is also overbroad in sweeping within its scope the intent or purpose to take action that poses no "clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order". *Cantwell* v. *Connecticut*, p. 635 *supra*. An assembly is declared unlawful if it gathers "for the purpose of disturbing the peace or exciting public alarm or disorder". See clause (c) of Code § 18.1-254.1, n. 2 *supra*. *Thomas* v. *Danville*, 207 Va. 656, 152 S.E.2d 265 (1967), a case not cited by counsel in this case, controls.

*Thomas* dealt with an injunction that enjoined the defendants

"4. From creating unnecessarily loud, objectionable, offensive and insulting noises, which are designed to upset the peace and tranquility of the community.

"6. From engaging in any act in a violent and tumultuous manner or holding unlawful assemblies such as to unreasonably disturb or alarm the public within the City of Danville."

*Id.* at 662, 152 S.E.2d at 269. We held both items 4 and 6 unconstitutionally overbroad under the First Amendment. And unlike the statutory definition of unlawful assembly, items 4 and 6 of the injunction in *Thomas* prohibited speech and action, not the mere gathering together with an improper intent or purpose.

In *Terminiello* v. *Chicago, supra,* the Court held constitutionally invalid the defendant's conviction of a misdemeanor, breach of the peace, under the following charge to the jury: "misbehavior may

---

[6] In addition to overbreadth, defense counsel also level an attack on the vagueness of the statutory definition of unlawful assembly and the resultant violation of due process. "The [Supreme] Court often uses the idioms of due process vagueness and First Amendment overbreadth interchangeably". Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844, 874 (1970). Appreciating that "if a statute is patently overbroad when read at full literal breadth, lack of certainty arises when the man of ordinary intelligence tries to guess not the literal scope but the permissible scope", *id.* we will confine this opinion to overbreadth. *See Cox* v. *Louisiana,* 379 U.S. 536, 551, 85 S.Ct. 453, 462, 13 L.Ed.2d 471, 482 (1965) (statute "unconstitutionally vague in its overly broad scope").

constitute a breach of the peace if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm". 337 U.S. at 3, 69 S.Ct. at 895, 93 L.Ed. at 1134. The same First Amendment considerations dictate our holding that the Virginia statutory definition of an unlawful assembly is unconstitutionally overbroad.

Clause (c) of Code § 18.1-254.1 would declare unlawful, and §§ 18.1-254.3 and -254.4 would impose criminal sanctions upon, peaceful gatherings such as for the purpose of exciting public alarm respecting the dangers of nuclear testing, germ warfare or pollution—assemblies that are protected by the First Amendment. Clause (c) is therefore overbroad and unconstitutional on its face.

Only one possibility of salvaging the statutory definition of unlawful assembly remains, to interpret the definition so as to exclude assemblies protected by the First Amendment but to include the assembly in which Owens and Ferguson participated. *Cf. Dombrowski v. Pfister*, 380 U.S. 479, 491-92, 85 S.Ct. 1116, 1123-24, 14 L.Ed.2d 22, 31 (1965). As a minimum in the salvage operation, we would be required to interpret the statute as including the qualification that any assembly, therein declared unlawful, must pose a "clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order". *Cantwell* v. *Connecticut*, p. 365 *supra*.

■ The Commonwealth, relying upon the validity of the statute as written, has not suggested that such an interpretation is permissible. And such an interpretation would be contrary to the intent evidenced by the words of the statute. To make an assembly unlawful, those words require only a showing of the intent or purpose that promoted the gathering. To add the requirement of clear and present danger would change, not interpret, the intent evidenced by the words of the statute. "It is the function of the judiciary to interpret statutes. Rewriting them is the function of the legislature". *Caldwell* v. *Commonwealth*, 198 Va. 454, 459, 94 S.E.2d 537, 540 (1956).

■ The Commonwealth contends (though obliquely) that because the actions taken by the members of the assembly involved in this case are not constitutionally protected, Owens and Ferguson lack standing to challenge the face of the statute declaring that assembly unlawful. But where First Amendment liberties are involved, persons who engage in non-privileged conduct are not precluded .

from attacking a statute under which they were convicted. *N.A.A.C.P.* v. *Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337-38, 9 L.Ed.2d 405, 418 (1963). And in this case we cannot know whether the trial court convicted Owens and Ferguson upon a finding that the assembly was unlawful merely because persons assembled "for the purpose of . . . exciting public alarm". Because a conviction upon such a finding cannot stand, we must reverse. *Terminiello* v. *Chicago*, *supra* at 6, 69 S.Ct. at 896, 93 L.Ed. at 1135; *Thornhill* v. *Alabama*, 310 U.S. 88, 96, 60 S.Ct. 736, 741, 84 L.Ed. 1093, 1099 (1940).[7]

*Reversed and dismissed.*

---

[7] As indicated in n. 1 *supra*, we cannot know whether the trial court convicted Owens and Ferguson of remaining at the place of a riot *or* of an unlawful assembly. Because they may have been convicted of remaining at an unlawful assembly, the statutory definition of which we have held unconstitutional, their convictions cannot stand. *Terminiello* v. *Chicago, supra.*