**GRASS ROOTS ORGANIZING WORKSHOP, (GROW),**
Plaintiff,

v.

**Honorable Carroll A. CAMPBELL, Jr., Governor of South Carolina and Chairman of the State Budget and Control Board; Grady P. Patterson, State Treasurer; Earl E. Morris, Jr., State Comptroller General; Rembert C. Dennis, Chairman of the Senate Finance Committee; Robert N. McLlellan, Chairman of the House Ways and Means Committee; Jesse A. Coles, Jr., Executive Director; and Richard W. Kelly, Director of General Services, individually and in their official capacity, Defendants.**

Civ. A. No. 3:87–1976–16.

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 18, 1989.

Robert Guild, Robert L. Hallman, Columbia, S.C., for plaintiff.

William L. Pope, Columbia, S.C., for defendants.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on the plaintiff's motion for equitable relief. For the reasons set forth below, the Court grants the plaintiff's motion in part and denies it in part.

The following facts are undisputed. On May 8, 1987, the plaintiff contacted the Division of General Services, a division of the South Carolina Budget and Control Board ("Board"), to obtain permission to erect a fixed sign bearing a political slogan[1] on the State House grounds for the period May 15 through May 29, and was told that a written application would be required. Accordingly, the plaintiff submitted a written application which the defendants received on May 11. By letter dated May 15, the plaintiff was informed that the sign could not be displayed at the desired time because Section 10–1–30 of the 1976 South Carolina Code of Laws, as amended, required an application to be submitted thirty days before any intended use of the grounds. The defendants had previously allowed other parties to use the State House grounds for various functions without applying the statutory thirty-day application period. The plaintiff then notified the defendants, by letter dated May 17, that it intended to display the sign from June 10 through June 24. Thereafter, the plaintiff had a sign manufactured for display on the grounds at a cost of $100. On June 10, defendant Richard W. Kelly, in a letter to the plaintiff, denied the application because the Board had adopted a new policy on the previous day prohibiting the display of any unattended fixed sign on the State House grounds. On June 18, members of the plaintiff organization and other individuals assembled on the State House grounds without a permit and displayed the sign the plaintiff had sought to erect.

On July 30, 1987, the plaintiff commenced this action under 42 U.S.C. § 1983 seeking (1) money damages for violation of its right to free expression guaranteed under the first amendment to the United States Constitution, (2) a declaration that Sections 10–1–30 and 10–11–20 of the 1976 South Carolina Code of Laws, as amended, are unconstitutional on their face, (3) an injunction prohibiting enforcement of those statutes and (4) any other necessary relief. The Court previously disposed of the plaintiff's claims for equitable relief relating to Sections 10–1–30 and 10–11–20[2] and the parties reached a settlement regarding the claim for money damages. Consequently, the only matters yet to be resolved are the claims for equitable relief raised here. By its motion, the plaintiff asks the Court for (1) a declaration that the plaintiff has the right to display the fixed sign and an in-

---

**1.** The proposed sign was to read: "REMEMBER VIETNAM? KEEP SOUTH CAROLINA NATIONAL GUARD OUT OF CENTRAL AMERICA."

**2.** *See* Order filed November 2, 1988, and Order filed November 10, 1988.

junction requiring the defendants to permit display of the sign for a period of two weeks and (2) a declaration stating that the plaintiff and all citizens have the right to use the State House grounds for peaceful free expression and assembly and specifying the constitutionally permissible standards under which the defendants may regulate the exercise of this right. The Court considers separately the two forms of relief sought.

## I.

■ First, the plaintiff asks that the Court declare that the plaintiff has a present right to display the fixed sign on the State House grounds as it sought to do when it applied for a permit in May 1987. The Court declines to issue such a declaration because it finds no such entitlement.

The Court previously held that the policy of June 9, 1987, prohibiting all fixed signs on the State House grounds is constitutional and that its implementation does not deprive the plaintiff of any constitutional right. *See* Order filed November 10, 1988, 704 F.Supp. 644. Implicit in that holding is the finding that after June 9, 1987, neither the plaintiff nor any other party has a constitutional right to erect a fixed sign on the State House grounds. Thus, the plaintiff is not now entitled to display its sign on the State House grounds and the Court will not order the defendants to permit such a display. The appropriate remedy for any constitutional deprivation the plaintiff suffered before June 9, 1987, is a claim for money damages which the plaintiff has pressed to final resolution. Accordingly, the Court denies the plaintiff's motion as it relates to the erection and display of the fixed sign.

## II.

Next the Court considers the plaintiff's motion insofar as it asks the Court to declare that all citizens have a right to peacefully assemble and express themselves on the State House grounds and to specify the constitutionally permissible standards under which the defendants may regulate that right. The plaintiff urges that such a declaration is particularly appropriate in light of a recently enacted South Carolina statute governing expressive activities on the State House grounds and authorizing the promulgation of regulations applicable to such activities.

Section 10–1–30 of the South Carolina Code of Laws, enacted last year, provides as follows:

**Use of State House Lobbies, steps and other public buildings and grounds.**

The Director of the Division of General Services of the State Budget and Control Board may authorize the use of the State House lobbies, the State House steps and grounds, and other public buildings and grounds in accordance with regulations promulgated by the board. The director shall obtain the approval of the Clerk of the Senate before authorizing any use of the Gressette Building and shall obtain the approval of the Clerk of the House of Representatives before authorizing any use of the Blatt Building. The regulations must contain provisions to insure that the public health, safety, and welfare will be protected in the use of the areas including reasonable time, place, and manner restrictions and application periods before use. If sufficient measures cannot be taken to protect the public health, safety, and welfare, the director shall deny the requested use. Other restrictions may be imposed on the use of the areas as are necessary for the conduct of business in those areas and the maintenance of the dignity, decorum, and aesthetics of the areas.

The South Carolina Budget and Control Board is presently in the process of promulgating regulations for use of the State House grounds in accordance with this statute. The plaintiff now asks that this Court issue a declaration setting forth the legal requirements that the State must satisfy in establishing regulations under Section 10–1–30 and in regulating expression until such time as regulations are in force. While it is not within the province of the Court to draft regulations for the State of South Carolina, the Court nevertheless deems it appropriate to set forth the general standards, established under existing law, which the State of South Carolina must follow in regulating expressive activity on the State House grounds.

The first amendment protects the right of individuals to express themselves on the State House grounds, subject to the government's right to enforce regulations of time, place and manner which are content neutral, are narrowly tailored to serve a significant state interest and leave open ample, alternative channels of communication. *See Perry Educational Ass'n v. Perry Local Educator's Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). Thus, any licensing process developed by the defendants must be content neutral and any delay caused thereby must be narrowly tailored to a legitimate government interest unrelated to the content of the expression. *See NAACP, Western Region v. City of Richmond,* 743 F.2d 1346 (9th Cir.1984); *Rosen v. Port of Portland,* 641 F.2d 1243, (9th Cir.1981); *York v. City of Danville,* 207 Va. 665, 152 S.E.2d 259 (1967). In addition, any such scheme must afford applicants procedural safeguards whereby (1) the State will bear the burden of instituting judicial proceedings, (2) any restraint prior to judicial review is only for a brief specified time and for the purpose of preserving the status quo and (3) a prompt and final judicial determination is assured. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *see also Riley v. National Federation of the Blind of N.C., Inc.,* — U.S. —, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *A Quaker Action Group v. Morton,* 516 F.2d 717 (D.C.Cir.1975). Any constitutional regulation of expression on the State House grounds must be effected in accordance with these principles.

As all of the plaintiff's claims have now been resolved, the Court directs that final judgment be entered in this action.

IT IS SO ORDERED.