## Richmond

H. G. McGhee v. Commonwealth of Virginia.

November 30, 1970.

Record No. 6924.

Present, Snead, C. J., I'Anson, Carrico, Gordon, Cochran and Harman, JJ.

*S. W. Tucker (J. L. Williams; Ruth L. Harvey; Jack Greenberg* (N.Y.); *James M. Nabrit, III* (N.Y.); *Hill, Tucker & Marsh,* on brief), for plaintiff in error.

*D. Gardiner Tyler, Former Assistant Attorney General (Andrew P. Miller, Attorney General; William H. Fuller, Special Assistant to the Attorney General,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the court.

This case arose from racial demonstrations which occurred in Danville during the spring and summer of 1963.

On June 6, 1963, the Corporation Court of Danville entered a temporary injunction order restraining four defendants named therein and persons acting in concert with them, from certain specified acts or conduct. Thereafter, numerous arrests were made for alleged violations of this temporary injunction. *See Rollins* v. *Commonwealth,* 211 Va. 438, 177 S. E. 2d 639, this day decided.

By order entered August 2, 1963, which set forth a revised list of prohibited acts, the injunction was made perpetual against the named defendants, all persons similarly situated, and all persons in active concert and participation with them. With certain exceptions this injunction was held valid by us in *Thomas* v. *City of Danville*, 207 Va. 656, 152 S. E. 2d 265 (1967). (*See also Baines and McGhee* v. *City of Danville*, 357 F. 2d 756 (4th Cir. 1966) where the federal court declined to hold the injunction unconstitutional on its face; judgment ordering remand to State court affirmed, 384 U. S. 890, 86 S. Ct. 1915, 16 L. Ed. 2d 996 (1966)).

A show cause order was entered by the lower court on Saturday, August 31, 1963, which recited that "[t]his order which should have been entered on the 28th day of August, 1963, is entered *nunc pro tunc* . . . ." The order directed the clerk to issue a rule requiring each defendant named therein, including Louie Martin Nasper, to appear on September 10, 1963, to show cause why he should not be held in contempt of court for violating the permanent injunction order on August 27, 1963. The show cause order further directed that a *capias* be issued for the immediate arrest of each defendant.

A rule was issued and a *capias* was served on Nasper on August 29, 1963. On September 6, 1963, he was released from jail after a bail bond in the sum of $500 had been executed by Nasper as principal and H. G. McGhee as surety, conditioned upon the appearance of Nasper before the court on September 10, 1963, "and at such time(s) as may be prescribed by the Court or to which the proceedings may be continued. . . ."

Following a delay of several years, during which recourse to the federal courts was unsuccessfully sought by the defendants, the cases against Nasper and others were set for trial on February 20, 1967. Nasper failed to appear. On February 24, 1967, his bail bond was forfeited and a writ of *scire facias* was issued. McGhee answered, asserting that the rule and *capias* under which Nasper was arrested were void, and that since the bond was executed under the duress of this unlawful confinement, it was unenforceable.

By order entered April 6, 1967, the court held that even if all the facts alleged in the answer were correct they failed to constitute reason sufficient in law to discharge the surety. Accordingly, it directed the clerk to issue an execution in favor of the Commonwealth against Nasper and McGhee in the amount of the bond and costs. From this order we granted McGhee a writ of error.

By his assignment of error McGhee challenges the overruling and disallowance by the court of his plea that the recognizance was void and that execution thereon would deprive him of his property without due process of law in violation of his Fourteenth Amendment rights. Specifically, he argues that the rule and *capias* were not validly signed and attested, that no summons was served on Nasper, and that no finding of probable cause was made before his arrest.

■ However, it is widely held that defects in or invalidity of the indictment against the principal constitute no defense for the surety on his bail bond. *Southern Surety Co.* v. *United States*, 23 F.2d 55 (8th Cir. 1927), *cert. denied*, 278 U.S. 604, 49 S.Ct. 11, 73 L.Ed. 532 (1927); *United States* v. *Davenport*, 266 F.425 (5th Cir. 1920); Restatement of Security § 205 (a) (iii) (1941). And, while there is authority to the contrary, we believe the better rule to be that it is no defense to the surety that his principal was illegally arrested. Restatement of Security § 205 (a) (ii) (1941).

We have had no occasion in recent years to consider a surety's right to avoid liability under a bail bond on the grounds that the bond was given under duress of the principal's unlawful imprisonment. However, in *Archer* v. *Commonwealth*, 10 Gratt. (51 Va.) 627 (1854), such a defense was pleaded by the surety in a bail bond forfeiture proceeding.

The surety pleaded that his principal had been formerly acquitted of the offenses with which he was charged when the recognizance was executed. We held that, if true, this was a good defense to the principal upon his prosecution but no defense to his surety, since the object of the recognizance was to "procure the personal appearance of the accused at court, to answer to the charge."

We further stated that when an order for the arrest of a person has issued from a court having jurisdiction of the subject matter the officer may arrest and detain the prisoner even though the court may have erred in ordering his arrest. We therefore found that the principal was in lawful custody, even though he could plead former acquittal at his trial, and that his bail bond was not void.

Hence, we did not have to decide whether a surety could successfully plead as a defense that the bail bond was given to procure the principal's release from an unlawful custody. We held that the surety's attempt to plead this as a defense was ineffective, saying at p. 637:

"But if we treat it as a plea of duress, and regard the demurrer

as admitting any state of facts with respect to the imprisonment . . . not inconsistent with those alleged and confessed, the plea would still . . . be radically defective. For as there were indictments depending against him in a court having jurisdiction to try them and to detain him in custody to answer to them, and the recognizance was entered into before a court having authority to let to bail, it is difficult to conceive of any state of facts in regard to his custody, when he entered into the recognizance, of which duress of imprisonment could be predicated."

Since all matters set forth in the surety's pleas were defenses which could only be asserted by the principal at his trial, the surety was held liable under the bond.

The rationale of the rule limiting the defenses available to a surety in a bond forfeiture proceeding is found in the proposition that such a proceeding is a civil rather than a criminal matter. *Collins* v. *Commonwealth*, 145 Va. 468, 134 S.E. 688 (1926). While the defenses sought to be asserted by McGhee against forfeiture of the bond could have been advanced by Nasper at his trial, if he had appeared to defend himself, they are not available to his surety in this civil proceeding. Therefore, McGhee will not be permitted to escape liability under his contractual obligation for alleged deficiencies in the rule and *capias*.

The judgment order is accordingly

*Affirmed.*