## Richmond

Avon William Rollins v. Commonwealth of Virginia.

November 30, 1970.

Record No. 7004.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Cochran and Harman, JJ.

*S. W. Tucker* (*J. L. Williams; Ruth L. Harvey; Jack Greenberg* (N.Y.); *James M. Nabrit, III* (N.Y.); *Hill, Tucker & Marsh,* on brief), for plaintiff in error.

*William H. Fuller, III, Special Assistant to the Attorney General* (*Andrew P. Miller, Attorney General; D. Gardiner Tyler, Assistant Attorney General,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the court.

This is another case arising from racial demonstrations which occurred in Danville in the spring and summer of 1963.

On June 6, 1963, the City of Danville filed in the Corporation Court of Danville its verified motion for a temporary restraining order against certain named defendants and "other unknown parties similarly situated," for the purpose of preventing mob violence. Attached to the motion was an affidavit of the City Manager setting forth various unlawful acts and threats of violence which had occurred since May 31, 1963. Pursuant thereto the court entered an order on June 6, 1963, temporarily restraining Lawrence George Campbell, Alexander Isiah Dunlap, Julious Emanuel Adams and Arthur Pinchback, Jr., "their servants, agents and employees, their attorneys and all other persons acting in concert therewith" from "participating" in certain acts or conduct therein specified.[1] Also on June 6, 1963, copies of the restraining order were personally served on the four named defendants.

On June 10, 1963, Avon William (Williams) Rollins and many others were arrested for violating the injunction in the presence of the arresting officers. An order was entered on that date directing that rules be issued requiring various persons, including Rollins, to appear on June 17, 1963, to show cause why they should not be punished for contempt of court for failing to comply with the injunction order, and further ordering that *capiases* be issued for their immediate attachment. A rule and a *capias* were thereupon served on Rollins, whose address was given as Knoxville, Tennessee.

After several years of delay, during which unsuccessful efforts were

---

[1] The prohibited acts were:

"(a) Unlawfully assembling in an unauthorized manner on the public streets and in the vicinity of the public buildings of the City of Danville.

"(b) Unlawful interference with the lawful operation of private enterprises and businesses in the City of Danville.

"(c) Unlawfully obstructing the freedom of movement of the general public of the City of Danville and the general traffic of the City of Danville.

"(d) Unlawfully obstructing the entrances and exits to and from both private business concerns and public facilities in the City of Danville.

"(e) Participating in and inciting mob violence, rioting and inciting persons to rioting.

"(f) Unlawfully carrying deadly weapons, threatening to use said deadly weapons, assaulting divers citizens of this community.

"(g) Unlawfully using loud and boisterous language interrupting the peace and repose of the citizens of the community, business establishments of the community, and the public works of the community.

"(h) Creating and maintaining a public nuisance by reason of unlawful and unauthorized gatherings and loud, boisterous, and concerted demonstrations interfering with the peace and quite and enjoyment of the citizens of the City of Danville."

made by the defendants to have the federal courts assume jurisdiction of the cases involving alleged violations of the injunction order,[2] Rollins was tried by the court and found guilty of violating the restraining order of June 6, 1963. Rollins appeals from the judgment order entered December 20, 1966, sentencing him to a fine of Thirty Dollars ($30.00) and thirty (30) days confinement in jail, with fifteen (15) days suspended upon condition of his good behavior for a period of four (4) years.

The temporary injunction order of June 6, 1963, with which we are here concerned, contained provisions similar but not identical to those of the permanent injunction order entered August 2, 1963, against the same named defendants. The permanent injunction, and the events which preceded its entry, including those of June 10, 1963, were considered by us in *Thomas* v. *City of Danville*, 207 Va. 656, 152 S. E. 2d 265 (1967). There we upheld, as valid restrictions upon First Amendment rights guaranteed by the United States Constitution, the provisions of the injunction order except for paragraphs 4 and 6, and the word "suggested" in paragraph 7.[3]

---

[2] *Chase* v. *McCain*, 200 F. Supp. 407 (W. D. Va. 1963); *Baines, et al.* v. *City of Danville, McGhee* v. *City of Danville, Lewis* v. *Bennett, Chase* v. *Aiken, Page and Dillard* v. *McCain*, 337 F. 2d 579 (4th Cir. 1964); *Baines and McGhee* v. *City of Danville* 357 F. 2d 756 (4th Cir. 1966), remanding order to State Court affirmed, 384 U. S. 890, 86 S. Ct. 1915, 16 L. Ed. 2d 996 (1966); *Chase* v. *Aiken,* 337 F. 2d 579 (4th Cir. 1964), *cert. denied,* 381 U. S. 939, 85 S. Ct. 1772, 14 L. Ed. 2d 702 (1965).

[3] The injunction order of August 2, 1963, made perpetual the temporary order of June 6, 1963, against the named defendants "and all persons similarly situated . . . and all persons in active concert and participation with them," and specifically prohibited the following:

"1. Obstructing vehicular and pedestrian traffic by marching and congregating in such manner as to impede the normal flow of either vehicular or pedestrian traffic; and

"2. Obstructing the use, enjoyment, ingress or egress of public facilities and public buildings of the City of Danville, or obstructing the use, enjoyment or ingress or egress of private property; and

"3. From committing assaults or injuries upon any persons, and from damaging or injuring any property whatsoever, private or public; and

"4. From creating unnecessarily loud, objectionable, offensive and insulting noises, which are designed to upset the peace and tranquility of the community; and

"5. From inciting any persons to, or participating in, any riot or violation of the laws of the Commonwealth of Virginia or the City of Danville designed to maintain the public peace within the City of Danville; and

"6. From engaging in any act in a violent and tumultuous manner or holding unlawful assemblies such as to unreasonably disturb or alarm the public within the City of Danville; and

"7. From participating in, financing, sponsoring, encouraging or engaging in meetings or other activities whereby the violation of the laws of the Commonwealth of

■ As Rollins did not in the lower court question the validity of the show cause order of June 10, 1963, the rule or the *capias*, we will not now consider for the first time any attack on these. Rule 1:8, Rules of Court. *See Williamson* v. *Commonwealth*, 211 Va. 57, 61, 175 S. E. 2d 285, 288 (1970); *Manley* v. *Commonwealth*, 211 Va. 146, 176 S. E. 2d 309 (1970). Moreover, the arrest itself is not pertinent here because even though Rollins was subsequently convicted it was not on the basis of any evidence acquired as a result of his arrest.

The crucial questions, therefore, raised by Rollins' assignments of error, relate to the sufficiency of the evidence upon which he was convicted.

■ Admittedly, Rollins was not a named defendant in the *ex parte* proceeding in which the temporary injunction order was entered nor had he been served with a copy of that order. It was necessary, therefore, for the Commonwealth to prove that he had actual notice or knowledge of the injunction before he committed prohibited acts. *Calamos* v. *Commonwealth*, 184 Va. 397, 403, 35 S. E. 2d 397, 399 (1945); *In Re Lennon*, 166 U. S. 548, 17 S. Ct. 658, 41 L. Ed. 1110 (1897).

The evidence as to notice consists of the uncontradicted testimony of J. E. Towler, Captain of Detectives, Danville Police Department. This officer testified that on June 10th, a business day, at about 9:00 a.m. he was dispatched in a car with two other policemen to the Spring Street parking lot to inform a group assembling there of the injunction prohibiting violations of law. He there found 75 to 100 persons organizing into small groups and instructing each other with hand movements and directions. Their "two main leaders were Rev. Dunlap and Avon Rollins."

Captain Towler stopped his car at the fringe of the gathering. Using his loud speaker, which could be heard for at least two blocks, he called Dunlap and Rollins by name and asked them to come to his car. Both declined to do so, Dunlap saying "If you can't give me what I want, then I don't want to take up any time talking with you."

Captain Towler then spoke to the assembled crowd, which had quieted down at his request. He informed them that under the court's injunction they could not march without a permit, block doorways

Virginia, City of Danville or the terms of this injunction order are suggested, advocated or encouraged; and

"8. From participating in and inciting mob violence, rioting and inciting persons to riot."

or streets, impede traffic or impede the normal flow of business, or create a disturbance by noise or disorderly conduct. If they marched, Captain Towler warned them, they would be arrested.

While Captain Towler admitted that he did not read the injunction order to the crowd, and, indeed, had not then read it himself, he asserted that he had been instructed as to its provisions in many sessions at police headquarters.

We conclude that Towler's testimony was sufficient to show that Rollins had actual notice of those provisions of the injunction which were broadcast to the crowd that he and Dunlap were leading. Knowledge of the substance rather than exact words of the injunction order was sufficient. *See Harriet Cotton Mills* v. *Local No. 578,* 251 N. C. 218, 229, 111 S. E. 2d 457, 464 (1959).

■ It was also necessary for the Commonwealth to prove that Rollins violated terms of the injunction to which he was amenable while acting as an agent of or in concert with one or more of the named defendants, Campbell, Dunlap, Adams and Pinchback.

Captain Towler's testimony was sufficient to place Rollins with Dunlap as a leader of the gathering crowd on the Spring Street parking lot. As Towler left he saw the group resume its organizing. Shortly thereafter, he met the same crowd on Union Street, arms linked and marching eight or ten abreast, completely blocking the street. Towler saw Avon Rollins with the crowd, but he was on the sidewalk and not in the street.

After noisily demonstrating on the steps of the Municipal Building, the group marched around nearby streets, completely blocking some of them and stopping traffic, before returning to occupy again the Municipal Building steps. There was evidence that they interfered with people going to and from the building and that one desiring to enter could do so only by picking his way through the demonstrators or by "skirting" the edges of the noisy crowd.

Police Chief E. G. McCain sent policemen to the steps to arrest leaders of the group. Two or three were arrested and led a few feet to the jail alley in which were located police headquarters, the office of a justice of the peace and the jail. The crowd surged behind, blocking the jail alley as they tried to prevent the police officers from jailing their prisoners. There was evidence that the demonstrators threatened to enter the jail to release the prisoners. The police used force to remove some of the demonstrators from the stone step in front of the jail door. To assist in dealing with the emergency, off-duty members of the police force were called to the scene.

Chief McCain warned the demonstrators in the jail alley that they were in violation of the court's injunction and would be arrested if they did not disperse. When this warning was ignored, they were told that fire hoses would be turned on them if they refused to leave. Again they remained at the jail door until a fire hose was used against them. Even then, after retreating a short distance, beyond the range of the hose, they continued to demonstrate until additional arrests were made and another fire hose was turned on them from a different direction.

Rollins was arrested at 11:30 a.m. a few feet from the jail alley at the Union and Patton Streets intersection by Officer L. P. Rigney who had seen him and one Bradshaw "in the jail alley accumulating a disturbance out there". Captain Towler also Saw Rollins in the jail alley. Furthermore, James Edward Whipple, the only defendant who testified at the consolidated trial of the cases, identified Rollins in a photograph showing the entrance to the jail alley during the demonstrations. Whipple also testified that three ministers, Dunlap, Campbell and Chase, were across the street from the jail alley in a white Cadillac automobile.

On the basis of the Commonwealth's evidence, (and no evidence was introduced on behalf of Rollins), the lower court was fully justified in finding Rollins guilty of contempt of court in violating provisions of the temporary restraining order of which he had been apprised. There was direct evidence that he participated in blocking the jail alley in violation of paragraphs (c) and (d), and perhaps of paragraph (a), of the injunction order after he had been duly warned. There was circumstantial evidence from which the court could infer that Rollins also violated paragraph (e) of the injunction order by participating in and inciting mob violence after having been warned.

The lower court could properly enjoin those acts prohibited in paragraphs (a), (c), (d) and (e) of the temporary restraining order. *Thomas* v. *City of Danville, supra.*

The only remaining question is whether the evidence is sufficient to show that Rollins, in violating the injunction, acted as agent of or in concert with the named defendants. The testimony of Towler and Whipple was sufficient for the court to infer that Rollins was acting in concert with Dunlap and perhaps Campbell. While the record does not affirmatively show that "Rev. Dunlap" and "Rev. Campbell" were the two named defendants, Lawrence George Campbell and Alexander Isiah Dunlap, such an inference may be fairly drawn.

The Reverend Mr. Dunlap was described, without objection, as Alexander Isiah Dunlap in the Commonwealth's argument in the lower court. Nowhere is there any suggestion that there was doubt as to the identity of Campbell or Dunlap or that there were other civil rights leaders with the same names then in Danville.

We conclude that there was credible evidence upon which the lower court could properly find that Rollins was guilty of violating the temporary injunction order of June 6, 1963.

*Affirmed.*