## Norfolk

WILLIAM POWELL

v.

DR. HORACE G. WARD, et al.,

No. 0873-91-1

RAELLE WISE MADRID

v.

DR. HORACE G. WARD, et al.

No. 0873-91-1

January 5, 1993

COUNSEL

Peter A. Cotorceanu (Knicely & Cotorceanu, on briefs), for appellants.

Linda S. Laibstain (Hofheimer, Nusbaum, McPhaul & Samuels, on brief), for appellees.

OPINION

**FITZPATRICK, J.**—William Powell and Raelle Wise Madrid (appellants) were convicted of criminal contempt for violation of a permanent prohibitory injunction and sentenced to serve a term of thirty days in the Norfolk City Jail. On appeal, they contend that: (1) their actions did not constitute contempt; (2) they were entitled to a jury trial; (3) the trial judge erred in finding that William Powell, who was not a named party to the original injunction, acted in concert with others who were parties to the injunction; and (4) that the trial judge erred in imposing convictions for criminal contempt in a civil proceeding. We find the appellants' first three grounds for appeal to be

without merit. We agree, however, that the trial court improperly imposed criminal contempt sanctions in a civil proceeding and, therefore, we reverse the convictions.

## BACKGROUND

The permanent injunction entered by the trial court on December 8, 1989 enjoined the named defendants and anyone acting in concert with them from:

(a) Trespassing on, sitting in, blocking, impeding or obstructing ingress into or egress from the Hillcrest Clinic, including demonstrating or picketing on the private property in and around the Bel Aire [b]uilding or obstructing the public driveways leading thereto;

(b) Physically abusing or tortiously harassing persons entering or leaving, working at or using any services at the Hillcrest Clinic; or

(c) Attempting or directing others to take any of the actions described in paragraphs (a) and (b) above.

The injunction was intended to curtail unlawful interference with the operation of the Hillcrest Clinic and to prevent unlawful harassment of the clinic's patrons and staff by anti-abortion protesters. In practice, the injunction was designed to keep demonstrators on or beyond the public sidewalk, and to enjoin them from trespassing upon the Bel Aire building's private property. The permanent injunction was entered by consent and the appropriateness of the injunction itself is not challenged in this appeal.

## CONTEMPTUOUS CONDUCT

The evidence shows that the appellants trespassed upon the Bel Aire building's private property and unlawfully harassed and impeded the progress of clinic patrons exiting their automobiles. Madrid admitted that she came onto the Bel Aire parking lot many times for the purpose of intercepting people going to the clinic. The fact that patrons tried to avoid Madrid by running from their cars to the clinic is a further example of her interference with their progress toward the building.

After Powell received a copy of the injunction in February 1991, he continued to approach cars as they entered the parking lot and attempted to talk to the occupants and present them with anti-abortion literature. He admitted that he would trespass upon the posted Bel Aire property carrying roses and anti-abortion literature. As patrons of the clinic walked across the parking lot, he would continue to talk to them despite their indications that they did not want to speak with him or accept his anti-abortion literature.

In addition, there is overwhelming evidence to support the trial judge's finding that Powell acted in concert with other individuals named as defendants in the injunction; that he had actual knowledge of the injunction; and that agents of the owner of the Bel Aire building informed him that he was trespassing. Therefore, the appellants undeniably violated the injunction.

The appellants argue that the injunction did not prohibit trespassing on the private property surrounding the clinic. We reject their strained construction of the terms of the injunction. The proscriptions of the injunction cannot be read in isolation. *See United States v. McAndrew*, 480 F. Supp. 1189 (E.D. Va. 1979). The words "demonstrating or picketing" follow the word "including," which is merely a clarification of other activities. The prohibited activities of trespassing, sitting in, blocking, impeding or obstructing ingress to or egress from the Hillcrest Clinic also include the activities of demonstrating or picketing. Furthermore, as appellants concede, activities which constitute impeding or obstructing access to the Bel Aire building violate the injunction. Accordingly, we find that the injunction is clear and unambiguous, and that the appellants knowingly violated its terms.

## ACTING IN CONCERT WITH NAMED DEFENDANTS

In *Rollins v. Commonwealth*, 211 Va. 438, 177 S.E.2d 639 (1970), the Supreme Court of Virginia defined the requirements necessary for finding a non-party to an injunction amenable to its terms. A non-party must have actual notice or knowledge of the injunction, and the evidence must show that the non-party violated the terms of the injunction while acting as an agent of or in concert with one or more of the named defendants. *Id.* at 442, 177 S.E.2d at 642-43.

The requirements set forth in *Rollins* are satisfied in this case. Powell had actual notice and knowledge of the injunction. The appellants concede that Ms. Collins, an employee of the clinic, handed

Powell a copy of the injunction on February 23, 1991. Upon receipt, he conferred with Mr. Crane, Mr. Amici, and Mr. Ganas, all of whom were named parties to the injunction. In addition, Powell was warned on numerous occasions that he was trespassing on the Bel Aire's private property. The evidence shows that Powell engaged in illegal activities on Bel Aire property with Mr. Crane and others since September 8, 1990. The fact that many of the named defendants remained on public property, adjacent to the private property upon which they were forbidden to trespass, does not overcome the strong evidence that Powell acted in concert with the named defendants.

■ Our standard for reviewing the sufficiency of the evidence is firmly established. The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will not be set aside unless it appears to be plainly wrong or without evidence to support it. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). We find no error in the trial court's determination that Powell acted in concert with others named as defendants in the injunction and that their actions were coordinated to prevent women from getting abortions at the clinic.

## THE RIGHT TO TRIAL BY JURY

■ The appellants argue that their conviction for criminal contempt must be reversed because they were denied their right to a jury trial. We disagree. In *Yoder v. Commonwealth*, the Supreme Court of Virginia noted that:

> the general rule was, that no person could be deprived of his property or his liberty except by the judgment of his peers. To this rule, however, there was an exception, and in cases of contempt the offender could be attached, brought at once before the court and punished without the intervention of a jury.

107 Va. 823, 827-28, 57 S.E. 581, 583 (1907). In *Nicholas v. Commonwealth*, the Court again observed that " '[t]here has been general recognition of the fact that the courts are clothed with [the power to punish for contempt], and must be authorized to exercise it without referring the issues of fact or law . . . to a jury.' " 186 Va. 315, 321, 42 S.E.2d 306, 309 (1947) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)). "We recognize, however, that the unbridled authority of courts to punish for criminal contempt in the absence of a jury is limited to 'petty contempts,' with a penalty not exceeding six months." *Baugh v. Commonwealth*, 14 Va.

App. 368, 374, 417 S.E.2d 891, 895 (1992). In this case, the trial court sentenced each appellant to thirty days in jail. Under these facts, they did not have a right to a jury trial.

## CRIMINAL CONTEMPT PROCEDURES

Finally, the appellants challenge their conviction for criminal contempt because the proceedings were civil in nature and the trial judge failed to follow the proper procedures for a criminal contempt trial. The evidence shows that the trial court did not: (1) adequately articulate the nature of the proceedings at the commencement of the hearing; (2) transfer the matter to the law side of the court; and (3) restyle the case and allow the Commonwealth to intervene and prosecute the action.

In *Bagwell v. International Union, United Mine Workers of America,* the Supreme Court explained the different types of contempt and the various options a trial court has available when a court order has been violated as follows:

> Contempts are classified as either "criminal" or "civil," although each " 'may partake of the characteristics' " of the other. "It is not the fact of punishment but rather its character and purpose, that often serve to distinguish between the two classes of cases."
>
> The punishment, whether fine or imprisonment, is deemed to be criminal if it is determinate and unconditional, and such penalties "may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." The punishment is deemed to be civil if it is conditional, and a defendant can avoid such a penalty by compliance with a court's order. *Id.* at 633. Civil contempt sanctions are either compensatory or coercive. Compensatory, civil contempt sanctions compensate a plaintiff for losses sustained because a defendant disobeyed a court's order. Coercive, civil contempt sanctions are imposed to compel a recalcitrant defendant to comply with a court's order.

244 Va. 463, 475, 423 S.E.2d. 349, 356 (1992) (citations omitted).

Analysis of the character of the relief granted and the terms of the sanctions imposed upon the appellants are not necessary in this case. The parties agree that the trial court applied the correct burden of

proof and found the appellants guilty of criminal contempt and, thereafter, imposed an unconditional criminal sentence of thirty days in jail.[1] However, the trial court failed to inform the parties that the proceeding was a criminal trial until the close of the evidence.

We hold that the trial judge, after deciding to conduct a criminal contempt trial, should have clearly articulated the criminal nature of the proceedings at the earliest possible moment. Thereafter, the trial court should have transferred the matter to the law side of the court, and substituted the Commonwealth as the party to prosecute this action. *See Local 333B, United Marine Div. v. Commonwealth*, 193 Va. 773, 780, 71 S.E.2d 159, 164, *cert. denied*, 344 U.S. 893 (1952). The purpose of this rule is to eliminate the confusion associated with the various types of contempt proceedings. It operates to ensure that the defendants are afforded all their Constitutional rights, to inform the defendants what procedural and evidentiary rules will be followed, and what standard of proof will be applied to the case.

In *United States v. United Mine Workers*, 330 U.S. 258 (1947), the United States Supreme Court was asked to reverse a finding of both criminal and civil contempt where the contempt proceeding carried the name and number of the underlying equity suit. The Court indicated that although the criminal and civil contempt matters were tried together, prejudice was avoided *so long as "the defendants were . . . accorded all the rights and privileges owing to defendants in criminal contempt cases." Id.* at 298 (emphasis added).

In *Local 333B*, the Virginia Supreme Court affirmed the procedure of transferring a criminal contempt proceeding from the equity to the law side of the court, and allowed the case to be restyled with the intervention of the Commonwealth to prosecute the action. The Court noted that this procedure "was in accord with established rules of pleading, and calculated to expedite the trial, avoid confusion, and to give the parties a fair hearing on the pertinent issues." 193 Va. at 782, 71 S.E.2d at 164.

---

[1] After the close of evidence and the argument of counsel, the trial court stated in pertinent part:

> Both of the defendants this morning are found beyond a reasonable doubt by the evidence to have been in violation of the injunction terms . . ., Madrid as a party to the order, Powell as one in which notice was given, acting in concert with those who were parties to the order. These are criminal contempts, ladies and gentlemen.

■ "Contempt proceedings prosecuted to preserve the power and vindicate the dignity of the court are criminal and punitive; those prosecuted to preserve and enforce the rights of private parties are civil, remedial, and coercive." *United Steelworkers v. Newport News Shipbuilding & Dry Dock Co.*, 220 Va. 547, 549, 260 S.E.2d 222, 224 (1979). There are significant differences in the two kinds of proceedings.

> In a criminal contempt proceeding, the defendant is presumed to be innocent, he must be proved guilty beyond a reasonable doubt, and he cannot be compelled to testify against himself. Moreover, a civil contempt proceeding is between the original parties to litigation and is instituted and tried as part of the main cause; a criminal contempt proceeding is between the public and the defendant, and is not a part of the original cause.

*Id.* at 550, 260 S.E.2d at 224 (citations omitted).

In this case, the parties were surprised to learn at the close of evidence that the trial court had converted the civil contempt hearing into a criminal trial. We conclude that the appellants were substantially prejudiced by the lack of notice that they were being tried for criminal contempt. The evidence shows that the contempt hearing had all the indicia of a civil proceeding and all parties to the litigation assumed that a civil proceeding was being conducted.

■ The Supreme Court of Virginia has held that it is reversible error to impose "criminal contempt penalties in a civil contempt proceeding." *Id.* at 551, 260 S.E.2d at 225. Therefore, we reverse the convictions. Unlike *United Steelworkers*, however, no evidence shows that the appellees "willingly acquiesced in the improper conversion of the civil contempt hearing into a criminal contempt trial." *Id.* In addition, the appellees do not seek on remand of this matter any compensatory civil sanctions. Accordingly, we remand this case with instructions that the matter be transferred to the law side of the trial court to prosecute the appellants for criminal contempt, if the Commonwealth be so inclined.

*Reversed and remanded.*

Baker, J., and Bray, J., concurred.