COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, O'Brien and Russell
Argued at Alexandria, Virginia

CHRISTIAN A. VON HASSELL

MEMORANDUM OPINION[*] BY
v.        Record No. 0414-16-4          JUDGE WESLEY G. RUSSELL, JR.
NOVEMBER 15, 2016

ELIZABETH VON HASSELL

FROM THE CIRCUIT COURT OF CLARKE COUNTY
Alexander R. Iden, Judge

Charles E. Powers (Batzli Stiles Butler PC, on briefs), for appellant.

(Paul A. Morrison; Morrison, Ross and Whelan, on brief), for
appellee.  Appellee submitting on brief.

Appellant husband assigns multiple errors to rulings of the trial court related to the entry of

the parties' final decree of divorce.  Specifically, he contends the trial court erred in classifying

certain personal property as appellee wife's separate property, in its classification and distribution of

husband's interest of a corporate entity in which he was the majority owner, in determining

husband's income for spousal support purposes, and in making certain contempt rulings.  Both

parties request that we award them attorneys' fees incurred on appeal.  For the reasons that follow,

we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

BACKGROUND

On appeal, we review the evidence in the favor of wife, the prevailing party below.  Niblett

v. Niblett, 65 Va. App. 616, 622, 779 S.E.2d 839, 842 (2015).  The parties were married on

September 11, 1993, in New York.  Prior to marriage, in 1989, husband founded a company,

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Repton Group, Inc. ("Repton"), that specializes in global finance. The company began as a New York company, but was converted into a Delaware limited liability company in 1993, and husband's ownership stake in the business was reduced to slightly more than 97%. At the time of marriage, wife was working in the pharmaceutical industry, where she earned a salary approximating $80,000. Wife left the workforce, however, when their first son was born in 1994. In 1996, the parties purchased a co-op apartment in New York City. Another son was born in 1997. The family initially resided in New York, but moved to Virginia in 1998. Husband continued to manage his business from New York, but would spend time in Virginia on the weekends.

During the marriage, income from Repton was the principal source of the parties' financial support. Wife performed occasional part-time work, and husband received insubstantial additional income for some of his writings. Income from Repton afforded the family a high standard of living, which included a large farm with horses, overseas vacations, and private-school education and a nanny for the children. Husband also inherited $2.5 million from his mother's estate. Husband was responsible for managing the parties' funds. In 2008, the parties established a trust, the von Hassell Virginia Trust. Regarding the husband's management of the trust, the trial court specifically found that "[t]o sustain [his] lavish lifestyle over a sustained period of time, [h]usband expended approximately $1 million in funds that had been inherited from his mother's estate, but that were transferred to a trust established for the benefit and wellbeing of the parties' two sons."

By 2010, the couple was having financial problems. They had to sell the Virginia farmhouse. With the aid of husband's sister, wife also sold numerous items of personal property at auction and via other methods. E-mails between the parties from 2011 show their discussions regarding their financial status, including what to sell and how to pay for things such as college tuition.

The parties separated on February 24, 2014. When wife filed her complaint for divorce on October 17, 2014, one of the children was still a minor, but by the time of entry of the final decree, that child had reached the age of majority. In her complaint, wife requested child custody and support, spousal support, equitable distribution of the parties' property and debts, and attorney's fees. On January 21, 2015, the trial court entered a *pendente lite* order directing husband to pay wife $5,893 monthly spousal support and $1,720 monthly child support. The support was awarded retroactively to the date of filing, October 17, 2014, and consequently, the order then set an arrearage of $26,352.72, which was to be paid by May 29, 2015. Wife also was awarded $7,900 towards attorney's fees. On August 19, 2015, a rule to show cause was entered against husband based on wife's allegations of his failure to abide by the terms of the *pendente lite* order.

An evidentiary hearing on the divorce and show cause issues was held on October 14, 2015. The court issued its ruling by letter opinion on November 9, 2015. It found that the marital estate comprised the New York apartment, three different vehicles, and a 97.5% interest in Repton. "[A]ny personal property present in [each party's] possession and any funds and securities . . . or other financial accounts titled in their separate names" were deemed separate property. The court assigned a definite dollar amount to each of the items of marital property, except Repton. With respect to the business, the court noted that "[t]he parties acknowledged that the interest . . . cannot be valued" and that courts were to look to the "intrinsic value of the property to the parties to measure value for equitable distribution purposes." The court recited Virginia law as to how goodwill can create value for a business and found that "the intrinsic value of the business is inextricably linked with the [h]usband's professional ability," so that without him, "its value is simply the fair market value of the business assets[.]" The court, however, did not assign any specific monetary value to the business's goodwill and found that "no evidence was presented" as to the value of the business assets.

The court also addressed the debts of the parties, which included an unpaid high school tuition bill, federal and New York tax liabilities, and substantial balances on wife's credit cards.[1] The court found the total amount of marital debt to be $249,000. After considering the applicable statutory factors, the court awarded wife a monetary award for her interest in the New York real estate, which, upon satisfaction of payment, was to be transferred to husband. Wife was awarded full interest in each of the vehicles, with a total value of $21,000. The court awarded husband the entirety of his ownership interest in Repton, but then "[t]o compensate [w]ife for her interest in that entity, and for the [husband's] mismanagement and waste of marital resources," the court allocated all of the marital debt to husband. The court also made husband responsible for any tax liability resulting from a potential settlement with American Express.

In calculating spousal support, the court first found that wife's income was $85,000 a year. To determine husband's income, the court reviewed the federal tax documents husband filed individually and on behalf of Repton for years 2010 to 2014. The court looked at Repton's income and what it reported as having paid husband. The court noted that husband's 2014 return did not include the income reported in Repton's 2014 K-1. The court compared the business expenses that were claimed by Repton and husband on their respective forms. The court noted that "[f]or 2010-2013, hefty business expenses were deducted first on the business return and then additional hefty expenses were deducted on the personal return." The court also heard testimony from husband and concluded, "all reasonable business expenses were deducted on Repton's tax returns each year." The court then averaged the amounts husband had received from Repton over those

---

[1] The trial court found that American Express was owed $90,000. Although the card was in wife's name, the evidence establishes that significant charges on that account were incurred not by wife, but by an acquaintance of husband.

- 4 -

years, resulting in an annual income of $323,687. After considering the other statutory factors, the court established a $3,000 monthly spousal support award payable to wife.

With respect to the show cause, the court found appellant in contempt based on his failure to pay spousal support, child support, and attorney's fees in accordance with the *pendente lite* order. The court found an arrearage of $93,875.98. In finding appellant in contempt, the court explicitly stated that, "Evidence of [h]usband's income shows he currently has, and has since January 21, 2015 had the ability to pay these sums." The court set a payment date of December 29, 2015, by which appellant was to pay the arrearage in full. If the full amount were not paid by that date, appellant was to "report to the Regional Jail . . . where he shall remain incarcerated until he pays the full amount[.]"

Husband filed a motion to reconsider, in which he sought review of the court's findings related to its calculation of his income, particularly his claimed business expenses; its consideration of certain equitable distribution and spousal support factors; and its treatment of items inherited by him from his mother. Husband also challenged the court's contempt ruling, contending the term of imprisonment to be imposed for failure to pay the arrears by the set date could not be indefinite, but rather was statutorily required to be limited to one year. The motion did not contain any statements regarding the court's classification of husband's interest in Repton as marital property.

The parties argued the motion on December 16, 2015. No new evidence was presented. Husband asserted "three main areas . . . for the [c]ourt to revise its findings. The first relates to personal property, the second is the determination of his income, and the third is the ruling on the contempt." With respect to the personal property, husband sought return of the items wife had in her possession that she admitted had been his prior to the marriage, arguing '[t]here is no question they were his premarital or inherited property." The contention that the court could not distribute those items because they were husband's separate property extended only to items of tangible

personal property that constituted family heirlooms; the classification of husband's interest in Repton was not addressed.

Regarding its contempt finding, the only change the court made to its previous rulings was to grant husband more time to purge himself of his contempt; to avoid jail for the contempt finding, husband now had until December 29, 2016, to pay the arrearage associated with the *pendente lite* order. The trial court reiterated that the contempt finding was related to past due amounts from the *pendente lite* order, referring to the amount past due as the "Contempt Arrears." Nothing in the trial court's contempt rulings imposed a punishment on husband if he fails to make payments that are due in the future.

On February 17, 2016, the court entered a final decree of divorce memorializing its rulings. Husband filed his objections to the final decree, and this appeal followed. On appeal, husband presents the following assignments of error:

> 1. That the trial court erred in classifying appellant's pre-marital property in appellee's possession as her separate property (in that such property is appellant's separate property) and failing to direct appellee to return such property to appellant.
>
> 2. That the trial court erred in classifying Repton Group as marital property in that the evidence was that such business was in existence prior to the parties' marriage and no evidence was presented as to an increase in value attributable to the contribution of marital property or personal efforts.
>
> 3. That the trial court erred in distributing Repton Group in that it acknowledged that no evidence was presented as to its value and, accordingly, did not value such property.
>
> 4. That the trial court erred in assigning to appellant all of the marital debt to "compensate" wife for her interest in the Repton Group in that equitable distribution is for the purpose of dividing the marital estate, not compensating one party.
>
> 5. That the trial court erred in ignoring appellant's legitimate business expenses in determining his income and, therefore, his purported ability to pay support in that such finding is not supported by the evidence.

- 6 -

6.    That the trial court erred in its award of spousal support based on the errors it committed related to equitable distribution as set forth in the other assignments of error.

7.    That the trial court erred in ordering the appellant to be incarcerated for civil contempt for an indeterminate period without limiting any confinement to twelve months pursuant to Virginia Code § 20-115.

8.    That the trial court erred in directing the appellant to begin incarceration at a future date without having the opportunity to be heard by the Court prior to the imposition of incarceration.

## ANALYSIS

### I. Equitable Distribution

"On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)).

### A. Personal Property

Husband seeks the return of several items of personal property he claims that, while they remain in wife's possession, are his separate property. Specifically, he asks for paintings and prints of Frederick the Great, a "Polish Uhlan" painting, a desk that had belonged to his father and two accompanying bookcases, some silver, engravings and certificates, an iron cross dating from 1813, and other miscellaneous prints. Wife admitted that the desk and Frederick the Great paintings and prints were acquired by husband prior to the marriage and are in her possession. She also acknowledged she had a white sofa, a bar, and some unidentified prints in her possession.

Husband argues wife is not entitled to retain possession of these items because they constitute his separate property, and as such, are not subject to the court's equitable distribution powers. Wife contends the property is not his because it belongs to their sons, or to the trust. The

- 7 -

court ordered that "the parties shall retain their separate property," which it found included "any personal property presently in their possession."

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005). Separate property includes property acquired prior to the marriage and property acquired during the marriage by gift or inheritance. Code § 20-107.3. Wife does not dispute how the property was acquired or contend that the property in question belongs to her, and the evidence supports the conclusion that some of it is not her separate property. Accordingly, the trial court erred in ruling that the property was wife's separate property.

Nevertheless, the fact that the property is not wife's separate property does not render it automatically husband's separate property. Although the property may have been husband's separate property when the parties married or when he initially acquired them from his family as heirlooms, wife presented evidence showing that husband may have divested himself of some of the items or that some items had been turned over to the trust. However, the only way to resolve whether a particular item is husband's separate property or if he forfeited his interest in the item is to consider each contested item individually. Although economical, the trial court's resolution of the issue by simply awarding the parties the personal property in their respective possession does not sufficiently account for items of personal property that the parties acknowledge were, at least at one time, the separate property of husband but are in wife's possession. Consequently, we reverse the trial court's finding that the contested items of personal property in wife's possession are her separate property and remand the issue for the trial court to determine which items, if any, remain husband's separate property.

B.  Repton

Appellant first challenges the trial court's classification of husband's interest in Repton as marital property as opposed to being his separate property.  He raises this issue for the first time on appeal.  He did not object to wife's characterization of Repton as marital property at trial; he did not raise the issue in his motion to reconsider; and in objecting to the final decree, he contested the trial court's allocation of "100 percent of the marital debt to him to compensate [wife] *for her interest* in Repton Group, for which she presented little evidence of value[.]"  Having failed to argue at trial that his interest in Repton was his separate property and having failed to object at trial to the trial court's classification of his interest as marital property, appellant has failed to preserve this issue for appeal.  Accordingly, we decline to address his argument that his interest in Repton should not have been classified as marital property.  Rule 5A:18; Lee v. Lee, 12 Va. App. 512, 404 S.E.2d 736 (1991).

Having found that Repton was a marital asset, the trial court was required to determine its value and, if appropriate, make a distribution.  Code § 20-107.3 sets forth three distinct stages by which a court is to fashion an equitable distribution award:  "The court first must classify the property as either separate or marital.  The court then must assign a value to the property based upon evidence presented by both parties.  Finally, the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)."  Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991).

Citing our prior decisions, the trial court noted that, to the extent that the intrinsic value of Repton was the result of goodwill resulting from husband's reputation or business acumen, a portion of Repton's value was the husband's separate property.  It then concluded that "[t]he intrinsic value of [Repton] is inextricably intertwined with [h]usband's professional ability, so if he is removed from the business, its value is simply the fair market value of the business

- 9 -

assets . . . ." Thus, the trial court determined that the fair market value of Repton's assets would be used to calculate the value of the marital property portion of husband's interest in Repton.

Little evidence of the value of Repton's assets was adduced. Having reviewed all of the evidence, the trial court concluded that "no evidence was presented" as to the value of Repton's assets. Consequently, the trial court did not assign a *specific* monetary value to husband's interest in Repton. The failure or inability of a trial court to assign a monetary value to a marital asset has significant implications for an equitable distribution award.

It was wife's burden to present evidence of Repton's value in order to be entitled to a distribution of her marital share of the property. See Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). A failure to adduce sufficient evidence of value to allow the trial court to assign a value to a particular item of marital property results in that property being excluded from the equitable distribution formula. See Alphin v. Alphin, 15 Va. App. 395, 404, 424 S.E.2d 572, 576 (1992); Swisher, Diehl & Cottrell, Family Law: Theory, Practice & Forms § 11.25(a) (2005 ed.) ("Where . . . evidence of value is insufficient to make a determination of value, the court is without authority to make an equitable distribution award based upon said property."). Thus, a finding that insufficient evidence of value was presented regarding the value of Repton should result in no equitable distribution award related to husband's interest in Repton.

Standing alone, such a result would have fully resolved the issues involving the valuation and distribution of Repton; however, the trial court made an additional ruling regarding husband's interest in Repton that cannot be reconciled with these findings.

Specifically, in apportioning $249,000 in marital debt, the trial court ruled that "[h]usband shall retain ownership of the Repton Group in his sole name. *To compensate Wife for her interest in that entity*, and for the [husband]'s mismanagement and waste of marital resources, the [husband] shall retain full responsibility for and hold the [wife] harmless from the

Marital Debt." (Emphasis added). Although the trial court did not specify how much of the $249,000 debt assignment was to compensate wife for her marital share of husband's interest in Repton as opposed to being a result of the other stated reasons,[2] the fact that any amount was to compensate wife for her marital share of husband's interest in Repton contradicts the trial court's finding that insufficient evidence was presented as to Repton's value to allow for a valuation determination. Inherent in the trial court's decision to monetarily "compensate [w]ife for her interest in" Repton is a finding of some value for Repton. Thus, the trial court implicitly found (1) some value of Repton was discernable from the evidence presented and (2) wife was entitled to at least a portion of that value.[3]

Given the deference due the trial court as factfinder, either finding, whether the evidence was insufficient to establish Repton's value to allow for an equitable distribution award or that the evidence sufficiently established Repton's value to allow the apportionment of some of the marital debt to husband to compensate wife for her marital share in husband's interest in Repton, likely would withstand appellate review. By definition, however, a trial court commits an abuse of discretion when its valuation and distribution decisions are contradictory and cannot be reconciled. Thus, the trial court erred either in concluding that the evidence did not allow it to determine a value for Repton or in compensating wife for an asset it had concluded could not be valued because of a lack of evidence.

---

[2] We note that, although the trial court's consideration of husband's "mismanagement and waste of marital resources" was appropriate in addressing equitable distribution, it is unclear to what extent they, rather than the value of wife's marital share of husband's interest in Repton, led to the apportionment of all of the marital debt to husband.

[3] Once again, we note that the record must be viewed in the light most favorable to wife, the prevailing party below. Niblett, 65 Va. App. at 622, 779 S.E.2d at 842.

Accordingly, we remand the issue of the valuation and distribution of husband's interest in Repton to the trial court for further proceedings. Based on the existing record, the trial court shall determine the value, if any, of Repton. If the trial court determines that the evidence does not support Repton having a value subject to distribution, it shall so specify. Alternatively, if the trial court determines that Repton has a value that is ascertainable from the evidence previously adduced and that wife is entitled to a resulting award to be paid by the husband's assumption of a specific portion of the marital debt, the trial court shall specify said amount.

## II. Spousal Support

"In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Accordingly, our review is limited to determining whether the trial court clearly abused its discretion." West v. West, 53 Va. App. 125, 130-31, 669 S.E.2d 390, 393 (2008) (quoting Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005)). Husband contends the trial court "erred in ignoring [his] legitimate business expenses in determining his income and, therefore his purported ability to pay support . . . is not supported by the evidence." Additionally, he argues that the "[t]rial [c]ourt erred in its award of spousal support based on the errors it committed related to equitable distribution as set forth in the other assignments of error." We address each contention in turn.

### A. Consideration of Husband's Claimed Business Expenses

In determining spousal support, the trial court is directed to consider "[t]he earning capacity, obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature." Code § 20-107.1(1). For purposes of spousal support calculations, "income" is "subject to deduction for reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." Frazer v. Frazer, 23 Va. App. 358, 377-78, 477 S.E.2d 290, 299 (1996) (holding that the calculation of gross

- 12 -

income for the determination of spousal support should be no different than the calculation of gross income for purposes of determining child support, pursuant to Code § 20-108.2(C), which provides for deduction of reasonable expenses).

Husband contends the trial court failed to allow him to deduct reasonable business expenses from his gross income. The statute provides only for "deduction of *reasonable* business expenses," and husband concedes that he bore the burden of establishing that the expenses he claimed were reasonable.

Husband offered the only evidence of the reasonable business expenses he allegedly incurred. The totality of the evidence adduced was husband's testimony and tax return documentation of both husband and Repton. Nothing in the record suggests the court failed to consider evidence of the expenses; rather, the trial court found husband's expense claims "incredible." The trial court was not bound to accept appellant's evidence. Sitting as factfinder, the trial court could certainly conclude that certain categories of expenses were excessive and appeared to have been "double counted," deducted once by Repton and again by husband. In short, based on this record, the trial court's decision to reject husband's claim regarding business expenses was reasonable. Accordingly, we cannot say that the trial court erred in refusing to include the claimed expenses in its calculation of husband's income for spousal support purposes.

B. Effect of Ruling on Equitable Distribution on Spousal Support Award

Husband correctly notes that review of the spousal support award is required if the trial court erred in its equitable distribution award. As we previously have held, "where an equitable distribution award is reversed on appeal and the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings." Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156 (2005) (*en banc*) (internal

- 13 -

quotation marks and citations omitted). Having reversed and remanded the trial court's equitable distribution award, we also must remand regarding spousal support to allow the trial court to consider what effect, if any, its ultimate equitable distribution award should have on the award of spousal support.[4]

### III. Contempt

"[W]e review the exercise of a court's contempt power under an abuse of discretion standard." Zedan v. Westheim, 60 Va. App. 556, 574, 729 S.E.2d 785, 794 (2012) (quoting Petrosinelli v. People for the Ethical Treatment of Animals, 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007)). "[A] trial court by definition abuses its discretion when it makes an error of law." Id. (quoting Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998)).

The trial court found husband in contempt for failing to make past due support payments that were required by the *pendente lite* order. The trial court ordered him to make the past due payments by a date certain or report to jail for contempt. Husband challenges the contempt order on two grounds. He argues that the imposition of a jail sentence to be served in the future constitutes a violation of his due process rights and that the indefinite term of the jail sentence violates Code § 20-115.

### A. Due Process Challenge

Citing our decision in Street v. Street, 24 Va. App. 14, 480 S.E.2d 118 (1997), husband argues that the trial court has violated his due process rights by imposing "a future, indefinite jail sentence conditioned upon his failure to completely satisfy his arrearage obligation by a date certain." Husband's reliance on Street is misplaced.

---

[4] Husband concedes that, depending on how the trial court ultimately resolves the equitable distribution issues, the amount of spousal support is subject to being increased or decreased.

- 14 -

In Street, we held that *before* a trial court may hold a litigant in contempt and impose a punishment for failing to pay a support arrearage, it must afford him due process. Id. at 24, 480 S.E.2d at 121. We noted that

> a defendant charged with out-of-court contempt must be given the opportunity to present evidence in his defense, including the right to call witnesses. The due process clause of the Fourteenth Amendment requires that alleged contemners have a reasonable opportunity to meet [the charge of contempt] by way of defense or explanation. This due process right includes the right to testify, to examine the opposing party, and to call witnesses in defense of the alleged contempt.

Id. (internal quotation marks and citations omitted).

Here, the trial court afforded husband due process prior to finding him in contempt or imposing any punishment. Husband was given notice of the October 14, 2015 show cause hearing, was allowed to answer the charge of contempt by presenting witnesses or any defenses he may have had, including an argument regarding his ability to pay, and was even allowed to challenge the contempt conviction in a motion to reconsider. As a result of the hearing, the trial court found him in contempt for his failure to pay *past due* support and specifically found that husband had, in the past and as of the date of the hearing, the ability to pay the sums due. In short, husband was afforded all of the due process to which he was entitled *before* the trial court found him in contempt or imposed punishment.

The fact that, in an act of grace, the trial court gave husband almost a full year to satisfy the arrearage before imposition of the contempt penalty does not alter the analysis. Consistent with due process, the trial court could have ordered husband to jail at the conclusion of the October 14, 2015 hearing, conditioning his release on the payment of the arrearage. That the trial court effectively suspended the sentence conditioned upon full payment being made before December 29, 2016, does not impinge on the due process rights of the defendant. Because the trial court could have imposed the penalty at the time of the hearing, the delayed imposition of the jail sentence conferred a benefit

- 15 -

on husband, and thus, did not infringe on his due process rights.  Accordingly, husband's due

process challenge to the contempt finding and subsequent punishment is not well-founded.

### B.  Code § 20-115 Challenge

Pursuant to Code § 20-113, "[t]he court, when it finds the respondent has failed to perform

the order of the court concerning the custody or the maintenance and support of the child or support

and maintenance of the spouse . . . may proceed to deal with the respondent as provided in . . .

[§] 20-115."  Code § 20-115 provides, in pertinent part, that

> upon conviction of any party for contempt of court in (i) failing or
> refusing to comply with any order or decree for support and
> maintenance for a spouse . . . or (ii) willfully failing or refusing to
> comply with any order entered pursuant to § 20-103 or § 20-107.3,
> the court (i) may commit and sentence such party to a local
> correctional facility as provided for in § 20-61 . . . .  [T]he
> assignment [to the local correctional facility] shall be for a fixed or
> indeterminate period or until the further order of the court.
> However, in no event shall commitment or work assignment be for
> more than twelve months.

Consistent with the statute, the trial court sentenced husband to the local jail for an indefinite

period of time, allowing husband to avoid jail time altogether or, if he served, to effectuate his

release upon payment of the past due support.  However, when husband raised the issue of the

maximum sentence allowed under Code § 20-115, the trial court stated that the contempt finding

was for "civil contempt and that [the sentence limitation found in Code §] 20-115 does not

apply . . ." and ordered that, if he is required to report to jail, husband "remain incarcerated until

he pays any remaining Contempt Arrears in full."

- 16 -

This was error.[5]  Regardless of whether the contempt is viewed as civil or criminal in nature,[6] Code § 20-115 places a limit on how long a party may be confined for failure to make a support payment.  Although we previously have held in a case of civil contempt for failure to make support payments that "there exists no express requirement that the court reference the statutory limitation on confinement in its order and . . . its omission is not a basis for reversal . . . ," Thompson v. Commonwealth, Record No. 0390-01-2, 2003 Va. App. LEXIS 42, at *6-7 (Va. Ct. App. Feb. 4, 2003), the trial court's express statement that the statute, and hence its limitation, did not apply raises significant concerns.[7]  Accordingly, we remand the contempt issue to the trial court for the limited purpose of noting in the order that the jail term is "until husband pays any remaining Contempt Arrears but, in no event, shall such term of confinement exceed twelve months."

---

[5] We note that wife, with commendable candor, conceded on brief "that twelve (12) months is the maximum time to be served" for the contempt conviction.

[6] Contempt citations "are of two classes — those prosecuted to preserve the power and to vindicate the dignity of the court, and those instituted to preserve and enforce the rights of private parties.  The former are criminal and punitive in their nature; the latter are civil and remedial." Roanoke W. W. Co. v. Glass Co., 151 Va. 229, 235-36, 144 S.E. 460, 462 (1928).  Furthermore, "[t]he punishment [for contempt], whether fine or imprisonment, is deemed to be criminal if it is determinate and unconditional . . . ; [t]he punishment is deemed to be civil if it is conditional, and a defendant can avoid such a penalty by compliance with a court's order."  Powell v. Ward, 15 Va. App. 553, 558, 425 S.E.2d 539, 542-43 (1993) (quoting Bagwell v. Internat'l Union, United Mine Workers of Am., 244 Va. 463, 475, 423 S.E.2d 349, 356 (1992)).  An order to pay spousal or child support will always involve the rights of private parties, and thus, failure to comply with a support order can always give rise to a civil contempt conviction.  However, because a court may also use the contempt power to vindicate the dignity of the court and its order, it is conceivable that failure to comply with such an order could be deemed an offense against the court, and thus, could constitute a criminal contempt.

[7] Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority.  Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

IV.  Attorneys' Fees on Appeal

Both parties have requested that they be awarded attorneys' fees on appeal.  Specifically, wife asks that we order that "she recover her costs expended in this matter and remand this case to the [t]rial [c]ourt for an award of reasonable attorneys' fees expended defending this meritless appeal."  Husband, citing wife's conduct of the appeal, "requests that he be awarded his attorney's fees related to this appeal . . . ."

We deny both parties' requests for attorneys' fees incurred on appeal.  We deny wife's request because, contrary to her assertions, husband's arguments were not frivolous.  Because we have found that at least some of husband's arguments meritorious, it is clear that at least some of the issues he raised were "appropriate and substantial," and therefore, an award of fees to wife would be inappropriate.  Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).  Similarly, because wife successfully defended against at least some of the issues raised by husband on appeal, we find that it would be inappropriate to order her to pay his attorneys' fees.[8]  Accordingly, the parties shall bear their own attorneys' fees and expenses associated with this appeal.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.

------

[8] We also note that, regarding the issue of personal property on which husband has prevailed, at least some of the confusion in the trial court likely stemmed from husband's failure to timely comply with the trial court's discovery order.